J-A19003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KISHAN PATEL, | |
| Appellant | No. 2625 EDA 2016 |

Appeal from the Judgment of Sentence Entered July 20, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-23-CR-0006450-2015

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 25, 2017**

Appellant, Kishan Patel, appeals from the judgment of sentence of 5 years' probation following his conviction for fleeing or attempting to elude a police officer (hereinafter "Flight"), driving under the influence of alcohol or a controlled substance (hereinafter "DUI"), and related Motor Vehicle Code offenses.  Appellant challenges the sufficiency of the evidence supporting his DUI conviction, as well as the grading of his Flight offense.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

On August 12, 2015 at approximately 12:55 a.m. Marple Township, (Delaware County), uniformed police officers Nicholas Coffin and Sean Hannigan were on duty in an unmarked police car heading north on Springfield Road, and were stopped at a red light at the intersection of Springfield and Eagle Roads.  After the red light turned green for the officers, a silver car coming off of Eagle Road turned left onto Springfield Road running a red

light and nearly striking the officers' car. The sliver car ran the red light at a high rate of speed, never slowing down.

Officer Coffin immediately activated his lights and siren before making a U-turn and giving pursuit to the silver car. As he was giving chase Officer Coffin heard the silver car's engine rev up as it was pulling away from the police car. The police car was traveling between 90 and 100 miles per hour at this point in time, and the silver car was still pulling away from the police car.

The pursuit continued until the silver car lost control trying to make a left hand turn on to the I-476 south bound on ramp, when it violently crashed into a guard rail twice, thereby disabling the car.

The two police officers approached the crashed car on foot and identified [Appellant] as the driver, and the driver's sister as the front seat passenger.

After Sergeant Brandon Graeff arrived at the crash scene in his marked patrol car Officer Coffin had a brief conversation with [Appellant]'s sister. He testified as follows:

[]I just asked her where they were coming from, why they didn't stop, and initially I had said why didn't you stop? And she - - and the female stated that he was just scared, directing that towards the driver. And I said, well, when you see the red and blue lights, like why didn't he think to pull over? And she said, well, he was just scared. And I said, didn't you realize that it was a police car behind you? And she said I did, but he was just scared[.]

There were three police officers at the scene and all three testified that [Appellant] smelled of alcohol. [Appellant] admitted to Officer Hannigan that he had some drinks earlier in the day. Thereafter, Sergeant Graeff administered field sobriety tests, which [Appellant] failed. All three officers also testified that [Appellant] was not able to safely operate a motor vehicle. After failing the field sobriety tests[,] [Appellant] was transported to Springfield Hospital, where he ultimately refused to have his blood tested.

Trial Court Opinion (TCO), 12/5/16, at 1-3 (citations omitted).

On November 25, 2015, the Commonwealth charged Appellant by criminal information with Flight, 75 Pa.C.S. § 3733; DUI-general impairment, 75 Pa.C.S. § 3802(a)(1); driving while operating privilege is suspended or revoked, 75 Pa.C.S. § 1543; failure to stop at a red signal, 75 Pa.C.S. § 3112(a)(3)(i); exceeding the maximum speed limit, 75 Pa.C.S. § 3362(a); and reckless driving, 75 Pa.C.S. § 3736. On April 20, 2016, one week before trial, the criminal information was amended to reflect that the Commonwealth was charging Appellant with the felony grading of the Flight offense.

A non-jury trial was held on April 27-29, 2016. The trial court found Appellant guilty of all the charged offenses, including the felony grading of the Flight offense. The court initially sentenced Appellant on July 18, 2016, but amended the imposed sentence on July 20, 2016. Ultimately, Appellant was sentenced to five years' probation for Flight, and to no further penalty for the remaining offenses. Appellant was also directed to comply with several specific terms of probation (community service, drug and alcohol evaluation, etc.) which are not relevant to the instant appeal.

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. Appellant now presents the following questions for our review:

> [A.] Whether the evidence was insufficient to sustain the conviction for driving under the influence since the Commonwealth failed to prove, beyond a reasonable doubt, that (1) Appellant imbibed a sufficient amount of alcohol such that it

(2) rendered him incapable of safely driving, operating, or being in actual physical control of the movement of a vehicle?

[B.] Whether the sentence for fleeing and attempting to elude graded as a felony is illegal since facts supporting the amended felony grading were not properly alleged in the information, nor proven beyond a reasonable doubt?

Appellant's Brief at 6.

Appellant's first claim concerns the sufficiency of the evidence supporting his conviction for DUI – general impairment, pursuant to 75 Pa.C.S. § 3802(a)(1). Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

> "[S]ubsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Commonwealth v. Segida*, [] 985 A.2d 871, 879 (Pa. 2009). With respect to the type, quantum, and quality of evidence required to prove a general impairment violation under Section 3802(a)(1), the Pennsylvania Supreme Court in *Segida* continued:

- 4 -

Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.... The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

[*Segida*,] 985 A.2d at 879.

***Commonwealth v. Teems***, 74 A.3d 142, 145 (Pa. Super. 2013).

Instantly, Appellant contends that the Commonwealth failed to prove by sufficient evidence that he was under the influence of alcohol to an extent that it rendered him incapable of safely driving. Appellant's Brief at 14. To support this claim, Appellant first argues that "[t]here was no testimony of swerving, weaving, or any kind of unsafe driving other than his alleged speeding." *Id.* This aspect of Appellant's claim is belied by the record. Not only was Appellant driving in excess of 90-100 m.p.h., itself an unsafe

driving condition, Appellant subsequently crashed his vehicle while engaging in flight from police. Appellant's behavior in this regard created substantial risks to himself, his passenger, other drivers on the road, and the pursuing police officers. Moreover, according to the officers' testimony, Appellant was initially observed running a red light, and he nearly struck the officers' car when he did so. Clearly, the Commonwealth's evidence adequately demonstrated that Appellant was not just incapable of safely driving, but that he was, in fact, driving unsafely at the relevant time.

The more pertinent question, given these facts, is whether Appellant's unsafe driving was due to his consumption of alcohol. In this regard, Appellant argues that "[t]he first officer to arrive stated, on camera and while still at the accident scene, that [Appellant] was not drunk." Appellant's Brief at 15 (citing N.T., 4/27/16, at 73). Appellant also refers to certain testimony by officers that his eyes were only slightly bloodshot, and that they only detected a slight odor of alcohol. *Id.*

Appellant's version of events presents an incomplete and cherry-picked view of the Commonwealth's evidence. Officer Coffin testified that he detected an odor of alcohol emanating from Appellant. N.T., 4/27/16, at 35. He observed that Appellant's eyes were both "glassy" and "a little bloodshot." *Id.* at 37. He ultimately testified that based on his education, training, and experience, the smell of alcohol, the appearance of Appellant's eyes, and the results of the sobriety tests conducted by Officer Graeff, that Appellant was "impaired and unable to safely operate a vehicle." *Id.* at 39.

Officer Hannigan testified that he could smell alcohol coming from Appellant a few minutes after the crash. *Id.* at 100. He observed the field sobriety test conducted by Officer Graeff. Officer Hannigan stated that, during those tests, Appellant "fail[ed] to wait for Sergeant Graeff to … finishing giving directions before he began and … I also noticed that he appeared unsteady on his feet on the walk and turn test." *Id.* at 102. He also heard Appellant state that he had "one drink earlier in the day or had some drinks earlier in the day…." *Id.* Based on these observations, Officer Hannigan testified that, in his opinion, Appellant "was unsafe to operate a motor vehicle." *Id.* at 103.

Sergeant Graeff arrived a few minutes after Officers Hannigan and Coffin. When he initially approached Appellant, he detected "a slight odor of alcoholic beverage on him…." *Id.* at 123. He then directed Appellant to perform several sobriety tests. During the heel-to-toe test, Sergeant Graeff observed that Appellant began to perform the test early (after being instructed to wait until Sergeant Graeff was done giving his instructions), rarely touch heel to toe, swayed "a little bit," and failed to adhere to the instruction to only take 9 paces before turning around. *Id.* at 125. During the one-leg balancing test, Appellant performed well on the test itself, but again began executing the test before he was instructed to begin. *Id.* at 127. Based on all his observations, Sergeant Graeff testified that he believed that Appellant was "impaired to the point he couldn't operate the vehicle safely on the Commonwealth's highways." *Id.* at 138-39.

- 7 -

In sum, Appellant engaged in unsafe driving when he ran a red light, nearly collided with officers' vehicle, engaged in high-speed flight from the officers when they tried to pursue him, and, ultimately, crashed when trying to exit the highway. Evidence of his intoxication at this time was demonstrated by his own admission of having consumed alcohol prior to driving, the smell of alcohol emanating from his body, his glassy, bloodshot eyes, and several indicators of intoxication observed during the administered sobriety tests. Moreover, all three police officers testified that, due to their education, training, and experience, they believed Appellant was intoxicated to a degree that rendered him incapable of safe driving. That Appellant did not fail every sobriety test in every respect was just one among many factors the trial court had to consider in determining Appellant's guilt. Appellant's exclusive focus on factors which tended to demonstrate his sobriety goes to the weight, and not the sufficiency of the evidence. Under the totality of the circumstances in this case, we conclude that these collective facts were sufficient to convict Appellant of violating 75 Pa.C.S. § 3802(a)(1).

Next Appellant claims his sentence for Flight is illegal because that offense purportedly was improperly graded as a felony. He asserts that the initial criminal information failed to charge Appellant with the felony grading of Flight for which he was ultimately sentenced, and he alleges that his due process rights were violated as a result. Although Appellant acknowledges that the information was later amended before trial to reflect the felony

grading, he claims that the amendment of the information was insufficient to address his due process concerns because, in amending the information, the Commonwealth did not allege facts sufficient "to give [Appellant] or the court notice of how the Commonwealth intended to prove the higher grading." Appellant's Brief at 23.

The crime of Flight is defined, in pertinent part, as follows:

> **(a) Offense defined.--**Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).
>
> …
>
> **(a.2) Grading.—**
>
>> (1) Except as provided in paragraph (2), an offense under subsection (a) constitutes a misdemeanor of the second degree. Any driver upon conviction shall pay an additional fine of $500. This fine shall be in addition to and not in lieu of all other fines, court expenses, jail sentences or penalties.
>>
>> (2) An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:
>>
>>> (i) commits a violation of section 3802 (relating to driving under influence of alcohol or controlled substance);
>>>
>>> (ii) crosses a State line; or
>>>
>>> (iii) endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase.

75 Pa.C.S. § 3733(a).

As Appellant correctly asserts, he was initially charged with the default, second-degree misdemeanor grading of Flight. Initial Criminal Information, 11/25/15, at 1 (single page). Later, however, the initial criminal information was amended to reflect that the Commonwealth was charging Appellant with the felony grading of Flight. Amended Criminal Information, 4/20/16, at 1 (single page). Instead of submitting a wholly new document, the Commonwealth appears to have merely resubmitted the initial criminal information, crossed out the initial grading of "M2," and replaced it with a handwritten "F3." *Id.* The description of the offense provided was left unchanged, and stated as follows: "Being the driver of a motor vehicle, willfully failed or refused to bring his or her vehicle to a stop, or otherwise fled or attempted to elude a pursuing officer, when given a visual and audible signal to bring the vehicle to a stop." *Id.* Notably, Appellant does not set forth a separate argument asserting that the evidence was insufficient to support the felony grading of Flight.[1] Rather, his illegal sentencing claim is premised primarily on the notion that he was not afforded notice of the factual basis for the felony grading of his Flight offense

---

[1] Indeed, the facts adduced at trial demonstrate that such an argument would lack merit. As discussed in the prior issue, we conclude that the evidence was sufficient to support Appellant's conviction for DUI – general impairment, which would simultaneously satisfy, for sufficiency purposes, 75 Pa.C.S. § 3733(a)(a.2)(2)(i).

in the amended criminal information. Appellant relies on several cases to support his argument, and we will address each in turn.

First, in **Commonwealth v. McNeill**, 439 A.2d 131 (Pa. Super. 1981), the appellant was convicted of escape, which was graded by the trial court as a felony of the third degree. However, the criminal information filed by the Commonwealth described, "almost verbatim[, a] recitation of the [general] statutory definition of escape, [18 Pa.C.S. §] 5121(a), … but [wa]s silent on the grade of the offense." **McNeill**, 439 A.2d at 133. The **McNeill** Court held that the appellant's sentence was illegal, reasoning:

> The statute defining escape, like that dealing with retail theft, incorporates the grading of the offense. We therefore hold that escape under [§] 5121(d)(1), [a] felony of the third degree, is "different in kind and character from" [§] 5121(d)(2), [a] misdemeanor of the second degree. Consequently, if an indictment or information fails to set forth the degree of the offense, a conviction for escape must be graded as a misdemeanor of the second degree. **See Commonwealth v. Jones**, 491 Pa.Super. 289, 420 A.2d 1046 (1980) (grading of defendant's escape conviction upheld because the information identified the charge as a felony).
>
> In the present case [the] appellant was convicted only on the first count of the indictment which makes no reference to the degree of the offense. Appellant, therefore, may be sentenced only to a maximum of two years imprisonment. 18 Pa.C.S.A. [§] 5121(d)(2); 18 Pa.C.S.A. [§] 1104. The sentence imposed, imprisonment for one to five years, is beyond this statutory limit and therefore illegal.

**McNeill**, 439 A.2d at 133.

Here, however, it is conceded that the Commonwealth amended the criminal information to grade Appellant's Flight offense as a felony of the

- 11 -

third degree prior to trial. *McNeill*, therefore, does not entitle Appellant to relief, as the grading of the offense at issue was clearly 'referenced' in the charging document.

Second, in *Commonwealth v. Nixon*, 476 A.2d 1313 (Pa. Super. 1984), the appellant pled guilty to burglary and escape. As was the case in *McNeill*, Nixon argued that his sentence for escape was illegal because the criminal information did not specify whether he was being charged with the misdemeanor or felony grading of that offense. Indeed, the facts were similar to *McNeill*, in that "[t]here were no facts recited in the information to suggest whether the offense committed by appellant was a felony or misdemeanor." *Nixon*, 476 A.2d at 1314. However, the Commonwealth contended that "*McNeill* [wa]s not controlling [because] the plea colloquy disclosed to [the] appellant that his offense was a felony for which a maximum sentence of seven years could be imposed by the court." *Nixon*, 476 A.2d at 1315. We rejected the Commonwealth's argument, holding that "[w]hen a defendant enters a plea of guilty to an information charging one offense, he cannot be sentenced for another, more serious offense. This is so even though the guilty plea colloquy suggests that he is to be sentenced for the more serious offense." *Id.*

Clearly, this aspect of the *Nixon* decision is not relevant to the instant matter. The purportedly defective criminal information here was amended prior to trial to reflect the grading of the offense for which Appellant was ultimately convicted. However, *Nixon* is informative with regard to its other

holding. Defendant Nixon made the same notice argument with regard to a separate escape charge, asserting that the grading of the offense was not adequately specified in the criminal information. However, the **Nixon** Court rejected that claim, because the information had "averred that [the] appellant had acted 'feloniously' in making his escape." **Id.** That was enough for this Court to conclude that Nixon was not illegally sentenced for the felony grading of escape. **Id.** Similarly, here, it is uncontested that Appellant was notified, prior to trial, that he was being charged with the felony grading of the Flight offense.

Third, in **Commonwealth v. Moses**, 271 A.2d 339 (Pa. 1970), our Supreme Court held that the appellant, who had been convicted of selling liquor after the required closing hour, could not be sentenced under the provision of that law providing for increased sentences for recidivist offenders, because the "lower court lacked the power to impose this enlarged sentence when the indictment did not contain averments of prior convictions." **Id.** at 340. We conclude that **Moses** also does not entitle Appellant to relief. The decision provides virtually no analysis of the claim, much less analysis that differs substantially from what this Court subsequently held in **McNeill** and **Nixon**.

Nevertheless, Appellant asserts that, despite the fact that the criminal information was amended to put him on notice that he was facing the felony grading of the Flight offense, "no facts (relating the crossing of state lines, speed that endangers others, or driving under the influence) supporting that

- 13 -

increase were alleged." Appellant's Brief at 23. Appellant essentially asserts that he was not made aware of which of the three possible provisions of 75 Pa.C.S. § 3733(a)(a.2)(2) applied to his prosecution.

We disagree. As the trial court notes, Appellant was also charged with a DUI offense, pursuant to 75 Pa.C.S. § 3802(a)(1), in the same criminal information in which he was charged with Flight. TCO at 8. Flight may be graded as felony "if the driver while fleeing or attempting to elude a police officer does any of the following: (i) commits a violation of section 3802 (relating to driving under influence of alcohol or controlled substance)[.]" 75 Pa.C.S. § 3733(a)(a.2)(2)(i). The factual basis for the felony grading was, therefore, set forth in the criminal information. Appellant cannot reasonably claim that he was not put on notice of the felony grading of the Flight offense when the predicate for the felony grading, a simultaneous DUI offense, was charged as a separate offense in the same criminal information.

Finally, Appellant claims his sentence for the felony grading of Flight violates the principles of **Alleyne v. United States**, 133 S.Ct. 2151 (2013). In **Alleyne**, "the United States Supreme Court held that, under the Sixth Amendment to the United States Constitution, a jury must find beyond a reasonable doubt any facts that increase a mandatory minimum sentence." **Commonwealth v. Hopkins**, 117 A.3d 247, 249 (Pa. 2015). Appellant's **Alleyne** claim is meritless. First, there were no mandatory minimum sentences at issue in this case. Second, Appellant's **Alleyne**-based argument completely disregards the fact that the predicate for the felony

grading of his Flight offense, his simultaneous DUI offense, was both charged in the criminal information and, as addressed in the first issue, above, proven to the factfinder beyond a reasonable doubt at trial. Accordingly, we conclude that the second question presented for our review also lacks merit.

Judgment of sentence **affirmed**.

*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/25/2017*