COMMONWEALTH of Pennsylvania, Appellee

v.

James Robert TEEMS, Appellant.

Superior Court of Pennsylvania.

Submitted March 18, 2013.
Filed June 19, 2013.

David C. Dagle, Camp Hill, for appellant.

David J. Drumheller, Assistant District Attorney, Chambersburg, for Com., appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Franklin County after a jury convicted Appellant on two counts of Driving Under the Influence of Alcohol, 75 Pa.C.S. § 3802(a)(1) (General impairment) and 75 Pa.C.S. § 3802(b) (High rate of alcohol). Sentenced to sixty months of intermediate punishment, with the first twelve months to be served in county jail, Appellant herein contends that the Commonwealth failed to present sufficient evidence at trial to support either charge. We affirm.

The relevant facts and procedural history of the matter are as follows:

At trial on this matter, the Commonwealth presented only one witness, [Pennsylvania State] Trooper Craig Finkle [of the Chambersburg Barracks]. No other witness testified, and [Appellant] presented no evidence. Through his testimony, Trooper Finkle provided the following facts: On December 12, 2010 at 2:00 a.m., [Pennsylvania State

Police] were dispatched to a broken down vehicle in a northbound[, right] lane of Interstate 81[, just before the Exit 17 northbound ramp. The vehicle was in the right lane, not on the shoulder.] N.T. 4/27/12 at 23. Upon arrival, Trooper Finkle [riding with fellow Trooper Dubbs] noted that the vehicle's brake lights were on. He also noted possible damage to the vehicle. [Appellant] was seated in the driver's seat. [The trooper noticed damage to the vehicle, which at that point had one or more wheels riding only on rims, and asked Appellant about what he may have hit and at what location. Appellant, however, was "unsure what he hit, if he hit anything and where it was at." N.T. at 24.]

Once [Appellant] was out of the vehicle, the trooper noted an odor of alcohol on [him], as well as slurred and slow speech. The trooper also testified that [Appellant] had trouble with his footing and with his hearing, but that this could have been medically related. Trooper did not perform the standard field sobriety tests because of the possible medical condition of [Appellant] and because their location on the interstate would make it unsafe. He did attempt to administer a portable breath test, however, [Appellant] failed the test five times because he was unable to follow instructions.

Trooper Finkle suspected that [Appellant] was intoxicated and arrested him. [Appellant] was transported to Chambersburg Hospital and chemical test[ing] was administered at 3:00 a.m. The lab results indicated that [Appellant] had a blood alcohol content of 0.143%.

Following the close of evidence, [Appellant] moved for a judgment of acquittal based upon the sufficiency of the evidence presented. The court heard argument on the motion and denied the requested relief, finding that sufficient evidence was presented to allow the case to go to the jury for decision, which it subsequently did.

Trial Court Opinion dated 11/1/12 at 1–2.

As noted *supra*, the jury convicted Appellant on both counts, and the court sentenced Appellant to 60 months' intermediate punishment, with the first 12 months to be served in Franklin County Jail. This appeal followed.

 Appellant raises the following issue for our review:

[WAS] SUFFICIENT EVIDENCE [ ] PRESENTED AT THE TRIAL OF JAMES TEEMS TO SUSTAIN A CONVICTION OF DRIVING UNDER THE INFLUENCE OF ALCOHOL, HIGH RATE OF ALCOHOL UNDER 75 PA.C.S. § 3802(b) OR DRIVING UNDER THE INFLUENCE OF ALCOHOL, OR GENERAL IMPAIRMENT UNDER 75 PA.C.S. § 3802(a)(1)[?]

Brief for Appellant at 7.

A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence pro-

duced, is free to believe all, part or none of the evidence.

*Commonwealth v. Toland,* 995 A.2d 1242, 1245 (Pa.Super.2010) (citations omitted).

Appellant was convicted of DUI under Sections 3802(a)(1) and (b), which, respectively, provide:

**(a) General impairment.**—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

\* \* \*

**(b) High rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1) and (b).

 First addressing Appellant's challenge to his general impairment conviction under Section 3802(a)(1), we note that "[S]ubsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Commonwealth v. Segida,* 604 Pa. 103, 114–116, 985 A.2d 871, 879 (Pa.2009). With respect to the type, quantum, and quality of evidence required to prove a general impairment violation under Sec-

tion 3802(a)(1), the Pennsylvania Supreme Court in *Segida* continued:

Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.... The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

*Id.* at 115–116, 985 A.2d at 879.

Appellant contends that the Commonwealth failed to establish his general impairment as defined above without presenting any direct evidence as to when he last drove, operated, or exercised actual

physical control of the movement of his vehicle. Because his car was completely immobilized and inoperative when troopers arrived, Appellant argues, he had no control of its movement, rendering Trooper Fickle's testimony about his post-accident condition irrelevant to the Section 3802(a)(1) inquiry, and leaving the Commonwealth with insufficient proof of his general impairment under the statute. The record demonstrated that the troopers could not move the vehicle off the highway given its damaged condition. The question becomes, therefore, whether the totality of evidence presented at trial allowed the fact-finder to make the reasonable inference that alcohol rendered Appellant incapable of safely driving at the last moment he was in actual physical control of the vehicle, which, under the facts, would have been the moment of his accident.

The recent Pennsylvania Supreme Court case in *Segida*, which also involved an early morning, one-vehicle accident to which a law enforcement officer was dispatched, is insightful. Upon his arrival, the officer noted the defendant's vehicle at the top of a hillside in some brush along the roadway. His interview with the defendant revealed signs of intoxication and prompted a field sobriety test, which the defendant failed. An arrest on suspicion of DUI was made and a subsequent blood test revealed a 0.326% BAC.

Convicted of, *inter alia*, violating Section 3802(a)(1), the defendant appealed to this Court that insufficient evidence supported the conviction because the prosecution had failed to present any evidence as to when Appellant drank, when he drove, or when the accident occurred. A panel of this Court agreed and vacated judgment of sentence, holding that although a reasonable jury could find defendant incapable of safe driving at the time the officer arrived at the accident scene, it could not reasonably find he was likewise incapacitated while he was driving because there was no evidence as to what time he drove and crashed.

The Pennsylvania Supreme Court granted review and reversed, finding sufficient circumstantial evidence allowing for the reasonable inference that defendant was incapable of safely driving at the time of his accident.[1] Specifically, the Court considered the violent nature of the accident suggested by the location and position of the car, the defendant's proximity to the car, his admission of driving at the time of the accident, the failed sobriety test of defendant, and the very high BAC obtained thereafter, even though the time of the blood draw was never recorded and therefore unavailable. Furthermore, though the officer acknowledged that he did not know how long before his arrival the accident occurred, he testified that it was very doubtful that much time passed between the time of the accident and the dispatch given the traffic on the roadway.

The Court explained the importance of these circumstances:

> While the officer acknowledged that he had not observed the accident and did not know exactly what time it had occurred, he opined that it was "doubtful" that the accident had occurred two or three hours or even ten minutes prior to his arrival on the scene "due to traffic on the road."

1. All six justices agreed that the prosecution established defendant's guilt under Section 3802(a)(1) beyond a reasonable doubt. The majority comprised four justices, with two justices writing concurring opinions that un- der the new DUI statute the prosecution need not prove the driver's condition while driving but, instead, only that pre-driving imbibing caused incapacity.

The undisputed evidence of Appellee's strikingly high blood alcohol level—0.326 percent—is noteworthy. Although precisely how much time had elapsed between the accident and Appellee's blood alcohol measurement is unknown, the fact-finder is not required to suspend common sense and ignore the fact that Appellee's blood alcohol concentration was not just elevated, but enormously elevated—four times the legal limit of 0.08, and twice the highest rate of alcohol pursuant to subsection 3802(c). Furthermore, the accident itself constitutes evidence that Appellee drove when he was incapable of doing so safely. There was only one vehicle involved in the accident, and Appellee admitted that he had lost control of the vehicle as he was driving home after drinking at a club.

*Id.* at 117–118, 985 A.2d at 880—881.

Guided by *Segida* in the case *sub judice*, we conclude that the circumstantial evidence surrounding Appellant's accident allowed for the inference necessary to support a conviction under Section 3802(a)(1). Specifically, Trooper Finkle testified that he responded immediately to a 2:00 a.m. dispatch of a disabled vehicle situated in the travel lane of northbound Interstate 81. Upon his 2:09 arrival, he found Appellant seated in the driver's side of the vehicle and depressing the brake, as indicated by the activated brake lights. The car had lost its tires, resting instead on only rims for reasons unbeknownst to Appellant, as he could not recall if he had struck anything and, if he had, when or where the accident occurred.

The record further reveals that Appellant showed no signs of serious injury, yet he elected to remain seated in a disabled vehicle in a lane of travel on the interstate instead of activating his hazard lights and exiting the car for a safer location off the highway. As to the precarious location of the car, it is notable that Troopers Finkle and Gibbs decided to forego administering a field sobriety test to Appellant because of the danger posed by the highway.

Once Trooper Finkle began to converse with Appellant, he detected a strong odor of alcohol and other classic signs of intoxication, including red, glassy eyes and slurred, slow speech. Suspecting DUI, Trooper Finkle asked Appellant to perform a portable breathalyzer test (PBT) frequently used to establish probable cause to arrest. Despite the Trooper's repeated instructions on how to use the PBT, Appellant failed five consecutive times to blow properly into the device. Finally, at 3:00 a.m., the Chambersburg Hospital administered a BAC test, which resulted in a 0.143%, nearly twice the legal limit.

Established from this evidence, therefore, was a serious one-car accident for which Appellant had neither a reasonable explanation nor, for that matter, any recollection of if, when, or where it occurred. Appellant never activated hazard lights and left the car though situated in a dangerous location, despite showing no obvious injury that would have prevented him from doing so. Emergency response verified significant damage to the vehicle and a driver exhibiting signs of intoxication and either an inability or unwillingness to comply with instructions. A blood draw administered just one hour later revealed a BAC nearly twice the legal limit. All of these facts gathered during the post-accident scene lend insight into Appellant's capacity to drive safely at the time he drove, helping to establish a nexus between the time of driving and the post-accident investigation.

Appellant contends that such a sufficient nexus could not be made without direct evidence as to how long beforehand the

accident occurred. We remind Appellant, however, that our jurisprudence does not require fact-finders to suspend their powers of logical reasoning or common sense in the absence of direct evidence. *See Segida, supra.* Instead, juries may make reasonable inferences from circumstantial evidence introduced at trial.

From evidence regarding the time and setting of this event, the jury could reasonably infer that troopers arrived at the scene very shortly after the accident left Appellant's car disabled on Interstate 81. Indeed, it would be quite doubtful that a car clearly damaged from a recent accident sat in a lane of travel on Interstate 81 for very long before travelers—be they professional tractor trailer operators or those returning home after a late Saturday night—would have called 911 to report the dangerous situation. The area in question was not a remote, secondary or tertiary roadway in a rural setting; it was, instead, a major artery running immediately adjacent to the Chambersburg metropolitan area at Exit 17. The notion that the emergency call center would have delayed a dispatch call given such a dangerous circumstance is likewise beyond reason.

From this evidence, the inference of a close temporal nexus between accident and emergency response is easily made. This nexus established, it follows that Appellant's alcohol-related incapability to drive safely as witnessed by Trooper Fickle after the accident would have very closely resembled Appellant's intoxicated state at the time of the accident.

Finally, we note that the court instructed the jury before its deliberations that the Commonwealth bore the burden of proof that Appellant was incapable of safely driving while he was in a position to manage the movement of the car:

> As with any fact however the Commonwealth may prove that the defendant drove the vehicle by circumstantial evidence. Moreover, a person may operate or be in actual physical control of the movement of a stopped vehicle.
>
> These terms are broader than the term ["]drive["] because the **law is concerned with the threat to public safety from motorists who have the present intention of driving a vehicle immediately within their control** as well as those who actually do drive while they are under the influence.
>
> While the mere fact that a defendant was somewhere within the passenger compartment of the vehicle is not by itself to show that he or she was operating or in actual physical control of the vehicle.[sic] **You should consider all the facts and circumstances in deciding whether the defendant was in physical control of the machinery of the vehicle or was in a position to manage its movement at the time and place of the incident.**

N.T. at 67 (emphasis added).

██ Juries are presumed to follow a court's instructions. *Commonwealth v. Mollett,* 5 A.3d 291 (Pa.Super.2010). At trial, the jury was instructed that crucial to reaching a verdict of guilt under Section 3801(a)(1) was finding the driver to have been in a position to manage the *movement* of the vehicle, that he posed a threat to public safety with the intention of driving a vehicle within his control. Under this instruction, a jury could not have reasonably determined that Appellant was in actual physical control of the movement of a disabled vehicle at the time troopers arrived at the scene. Instead, a conviction under Section 3802(a)(1) under this instruction would necessarily have come from the jury's determination that alcohol rendered him incapable of safely driving at the time Appellant drove and crashed. Because we conclude that the prosecution

introduced sufficient evidence to support this inference, we reject Appellant's sufficiency challenge to his conviction under Section 3802(a)(1).

 Appellant's remaining challenge goes to the sufficiency of evidence offered to prove his guilt under Section 3802(b). Specifically, Appellant argues that no evidence was offered to establish that his BAC test, administered at 3:00 a.m. occurred within two hours of the time he drove, operated, or exercised actual physical control over the movement of his vehicle. Only if one accepts as reasonable the notion that Appellant's damaged and immobilized car came to a stop on Interstate 81 before 1:00 a.m. early Sunday morning—more than two hours before the 3:00 a.m. blood draw—and sat there for over one hour before Troopers Fickle and Gibbs were dispatched to the scene, may one accept Appellant's claim on appeal.

To this contention we apply the same rationale offered to resolve the first sufficiency challenge—that sufficient circumstantial evidence existed regarding the severity of the accident, the position of Appellant's car in a travel lane of a major artery near a population center, and the time of the accident (some time prior to 2:00 a.m. (the time of dispatch) on a Saturday night)—to conclude it was extremely doubtful that more than one hour passed from the time of the accident to the time of emergency response at the scene. It strains credulity to suggest that traffic was so infrequent at this metropolitan location of Interstate 81 during a late Saturday night that an eyewitness 911 call would not have occurred within minutes of the accident to report such an inherently dangerous situation on the highway. It is similarly beyond reason to conclude that an emergency call center would have delayed dispatch to the scene. Accordingly, we conclude the evidence

sufficed to allow the inference that Appellant's blood draw occurred within two hours of the time of his accident.

Judgment of sentence is affirmed.