J-S35011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALAN B. MARTIN, | |
| Appellant | No. 211 MDA 2018 |

Appeal from the Judgment of Sentence Entered January 23, 2018
In the Court of Common Pleas of York County
Civil Division at No(s):  CP-67-CR-0005288-2017

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 27, 2018**

Appellant, Alan B. Martin, appeals from the judgment of sentence of, *inter alia*, six months' probation, imposed after he was convicted of driving under the influence of alcohol or controlled substance (DUI)–general impairment, 75 Pa.C.S. § 3802(a)(1).  On appeal, Appellant challenges the sufficiency and weight of the evidence underlying his conviction.  In addition, Appellant's counsel, Anthony J. Tambourino, Esq., seeks to withdraw his representation of Appellant pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Attorney Tambourino summarizes the factual and procedural history of this case as follows:

FACTUAL HISTORY

Appellant … was charged with one count of DUI-[g]eneral [i]mpairment under 75 Pa.C.S. [§] 3801(a)(1) and [s]peeding under 75 Pa.C.S. § 3362(a)(3). These charges were based on an incident that occurred on June 8, 2017[,] at about 2:00 AM[,] in the southern end of York County, Pennsylvania within the Heidelberg/Manheim Townships area.

Officer Dennis Brillhart, an officer with Southwestern Regional Police Department, was on traffic enforcement patrol working the 5 PM to 5 AM shift on that day.[1] He had parked in a Rutter's convenience store parking lot on Seven Valleys Road and observed a Jeep Cherokee pass by going at [a] greater speed than the posted limit. He pulled out and pursued the Jeep, following [it] through several roads that had a 35 mph speed limit. He followed the Jeep for about three-quarters to a mile before it stopped. He estimated the vehicle was traveling between 60 and 65 mph. The Jeep eventually turned into a trailer park on Messersmith Road and stopped outside a trailer. Officer Brillhart saw [Appellant] get out of the Jeep, so he got out of his patrol car and approached. He explained why he stopped [Appellant] and as he was talking to [Appellant], he observed bloodshot, glassy eyes, slurred speech, and unsteady gait. He observed [Appellant] was "wobbly" on his feet while standing and while walking around. He told [Appellant] he believed [Appellant] was under the influence of alcohol. He advised [Appellant] he was going to conduct field sobriety tests, and [Appellant] refused. Officer Brillhart asked [Appellant] if he had consumed any alcohol and [Appellant] replied "he had a couple earlier in the evening." [Appellant] further explained "he was in York City investigating the Mayor of York. He said that the Mayor and his family are corrupt, and he is gathering intel on the Mayor and his family." [Appellant] told Officer Brillhart he had met somebody at a bar in York that had "intel" on the Mayor.

[1] Officer Brillhart noted he had 27 years' experience as a police officer. Over the years, he had obtained substantial training and education in DUI enforcement. His training included a "degree" as a[ Horizontal Gaze Nystagmus (HGN)] practitioner, multiple schools to learn how to spot impaired driving and the effects of alcohol on individuals. He further had conducted 700-800 DUI investigations in his 27[-]year career.

After [Appellant] refused to do the field sobriety tests, he began to walk into his house, but Officer Brillhart stopped him. He asked [Appellant] for his license and registration[,] and [Appellant] "fumbled through his wallet." Officer Brillhart then placed [Appellant] under arrest and put him in handcuffs. [Appellant] told him he had a weak bladder and urinated himself.

At trial, Officer Brillhart opined that [Appellant] was incapable of safely driving an automobile. He based that on his training and experience in DUI investigations and his observations of [Appellant]. He considered [Appellant's] bloodshot, glassy eyes, the strong odor of alcohol, his unsteady gait[,] and the slurred speech in making his determination. He further did not feel comfortable letting [Appellant] drive away from the scene of the stop.[2]

[2] Though [Appellant] was, as mentioned, already home.

[Appellant] testified in his own defense and did confirm that he had been in a bar in York that evening to meet a friend. He confirmed he was at the bar that evening, however[,] he indicated it was to obtain information on his son's murder. The person he met with told him to "watch his back" because he might be "stepping on somebody's toes." On the way home, he saw a car coming up behind him, but it did[ not] look like it had lights on or they were dim. [Appellant] testified that scared him.

He testified that he does[ not] drive fast because he is "never in a hurry." Once he pulled into his driveway, he realized it was the police following him, so he planned to explain what was going on. Once he parked, he began to get out of the car and realized he had a plastic vial with whiskey in it. The person he saw at the bar bought him two shots, but he did[ not] drink the one.[3] The person he was with told him not to leave the second shot, so he put it in the vial.

[3] On cross-examination, [Appellant] said it was Jägermeister, not whiskey.

When [Appellant] realized he had the vial of whiskey, he thought he was going to get in trouble for an "open container," so he drank what was in the vial and threw it in the back of his Jeep.[4] [Appellant] then tried to reach his cane before he got out, but it had fallen between the seats. However, he could not reach it, and that is why he was unsteady when he got of his Jeep. He had an

accident many years prior, and his Achilles[] tendons "don't work."

> [4] Upon questioning by the court, Officer Brillhart testified that [Appellant] never told him that he had just consumed alcohol before getting out of the vehicle[.]

When [Appellant] spoke to Officer Brillhart, he admitted he had been drinking. He testified that he had, however, only had a "sip" at the bar and drank the rest when he pulled in his driveway. When asked if he was intoxicated while he drove, [Appellant] testified "I would never do it. Never."

At the conclusion of testimony, the trial court found Officer Brillhart's testimony to be credible and [that it] "sufficiently supports the officer's opinion that [Appellant] was intoxicated and not capable of safe driving." The trial court found [Appellant's] testimony to be "incredible, particularly the testimony regarding the pill bottle full of Jägermeister and that [Appellant,] with a police officer sitting behind him[,] consumed [it] before talking to the police officer after getting out of his car." The trial court, thus, found [Appellant] guilty of DUI-[i]ncapable of [s]afe [d]riving. [Appellant] waived his [pre-sentence investigation,] and the trial court sentenced him to 6 months' probation, [a] $300 fine, standard DUI conditions, and costs.

PROCEDURAL HISTORY

On June 13, 2017, Southwest Regional Police Department charged [Appellant] with DUI-[g]eneral [i]mpairment (1st Off.) and Speeding.[5] [Appellant] applied and qualified for a public defender[,] and Attorney Joshua Neiderhiser was assigned to his case. On January 23, 2018, the Honorable Gregory M. Snyder found [Appellant] guilty at a bench trial of … DUI. The Commonwealth withdrew the speeding charge. On January 23, 2018, the trial court imposed [a] sentence of 6 months' probation, costs, and fines.

> [5] 75 Pa.C.S. § 3802(a)(1) and 75 Pa.C.S. § 3362(a)(3), respectively.

[Appellant] requested an appeal. Undersigned counsel was assigned and entered his appearance on January 30, 2018….

***Anders*** Brief at 6-11 (internal citations omitted).

Appellant timely filed his notice of appeal on January 30, 2018. On January 31, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied. In his Rule 1925(b) statement, Appellant raises the following issues:

1. The Commonwealth failed to present sufficient evidence in order to convict Appellant beyond a reasonable doubt of DUI-[g]eneral [i]mpairment, because the Commonwealth failed to prove Appellant was incapable of safe driving.

2. The guilty verdict was against the weight of the evidence because the evidence presented demonstrated that Appellant had consumed alcohol after he had been stopped by the officer.

Rule 1925(b) statement, 2/21/2018, at 1 (unnumbered pages). The trial court issued a Rule 1925(a) opinion on March 13, 2018.

On April 16, 2018, Attorney Tambourino filed with this Court a petition to withdraw as counsel. On that same day, counsel also filed an **Anders** brief, discussing the above-stated issues and concluding that they are frivolous, and that Appellant has no other, non-frivolous issues he could pursue herein. Accordingly,

[t]his Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014) (some brackets added). After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

In the case *sub judice*, Attorney Tambourino's *Anders* brief complies with the above-stated requirements. Specifically, he provides a summary of the procedural history and facts, he refers to parts of the record that could arguably support Appellant's appeal, and he sets forth his conclusion that Appellant's appeal is frivolous. In addition, he states his reasons for that determination, and supports his rationale with citations to relevant facts of record and legal authority. Although neither Attorney Tambourino's petition to withdraw nor his *Anders* brief contains proof of service on Appellant, Attorney Tambourino has sent a letter to Appellant enclosing copies of both

his **Anders** brief and petition to withdraw. In that letter, which he has attached to his petition to withdraw, Attorney Tambourino also informed Appellant of the rights enumerated in **Nischan**. Thus, counsel has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal.

In his first issue, Appellant challenges the sufficiency of the evidence, arguing that the Commonwealth failed to prove that he was incapable of safe driving. We apply the following standard of review to sufficiency claims:

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Teems**, 74 A.3d 142, 144-45 (Pa. Super. 2013) (citation omitted).

The relevant statute provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the

movement of the vehicle." 75 Pa.C.S. § 3802(a)(1). "Subsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Teems*, 74 A.3d at 145 (original brackets and citation omitted). Further, we acknowledge that:

> Section 3802(a)(1) … is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving…. The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. … The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

*Id.* (citation omitted).

Here, Officer Brillhart testified that Appellant was traveling between approximately 60-65 mph on roads with 35 mph speed limits. N.T. Trial, 1/23/2018, at 9. He stated that Appellant had "bloodshot, glassy eyes" and "slurred speech[,]" and "wasn't very steady on his feet." *Id.* at 11. Officer

Brillhart explained that Appellant told him that he had "had a couple [drinks] earlier in the evening[,]" and Officer Brillhart observed "a strong odor of an alcoholic beverage on his breath." *Id.* at 12, 14. When Officer Brillhart requested to see Appellant's license and registration, Officer Brillhart described that Appellant "had trouble finding his license. He kept fumbling through his wallet." *Id.* Officer Brillhart testified that Appellant "bypassed his license maybe twice before he actually handed [it] to me." *Id.* Viewing this evidence, and all reasonable inferences drawn from it, in the light most favorable to the Commonwealth as the verdict winner, *see Teems*, 74 A.3d at 144-45, we deem this evidence sufficient to establish that Appellant was incapable of safe driving.

In his second issue, Appellant contends that the verdict was against the weight of the evidence. In particular, he claims that the evidence shows that he had consumed alcohol **after** he had been stopped by the officer.

Initially, it appears that Appellant has waived this claim. "A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A)(1)-(3). Based on our review of the record, it does not seem that Appellant properly raised his weight claim below, and if he had, he does not point us to where he did so. **See** Pa.R.A.P.

2117(c) (requiring a statement of place of raising or preservation of issues).[1]

Thus, this claim is waived.

Nevertheless, even if Appellant had properly preserved his weight claim, we would conclude that no relief is due. For such claims, we apply the following standard of review:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. The Pennsylvania Supreme Court has explained that [a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Childs*, 63 A.3d 323, 326-37 (Pa. Super. 2013) (citation omitted).

In the case at bar, Appellant asserts that "the weight of the evidence demonstrated that [he] consumed alcohol after he was stopped by Officer Brillhart and that was the reason he appeared intoxicated." *Anders* Brief at 17. In other words, Appellant says he was not incapable of safe driving because his intoxication came from alcohol he had drank after Officer Brillhart had already pulled him over. *See id.* at 18.

The trial court acknowledged that Appellant testified that he had a pill bottle filled with alcohol on him, and said he had drank it after Officer Brillhart pulled him over because he did not want to be found with an open container

---

[1] Instead, our review of the record indicates that Appellant raised his weight claim for the first time in his Rule 1925(b) statement.

of alcohol. TCO at 4 (citing N.T. at 4). However, the trial court did not find Appellant to be credible. *Id.* Further, it noted that Officer Brillhart testified that Appellant did not mention that he had just consumed a pill bottle filled with alcohol at the time of the stop, nor did Officer Brillhart see Appellant drink anything when approaching his car. *Id.* at 5 (citing N.T. at 42-43). Accordingly, we would discern no abuse of discretion by the trial court in rejecting Appellant's weight claim.

In conclusion, we agree with Attorney Tambourino that Appellant's issues are frivolous. Furthermore, our independent examination of the record reveals no other, non-frivolous issues that Appellant could raise on appeal. Therefore, we affirm his judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2018

- 11 -