J-A14015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACHARY COLE SMITH | : | |
| | : | |
| Appellant | : | No. 1571 MDA 2021 |

Appeal from the Judgment of Sentence Entered November 9, 2021
In the Court of Common Pleas of Perry County Criminal Division at
No(s):  CP-50-CR-0000084-2021

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED:  JULY 26, 2022**

Appellant, Zachary Cole Smith, appeals from the judgment of sentence of, *inter alia*, 48 hours' to six months' incarceration, imposed after he was convicted of driving under the influence of alcohol or controlled substance – general impairment ("DUI"), 75 Pa.C.S. § 3802(a)(1); disregarding lane of traffic, 75 Pa.C.S. § 3309(1); and failing to stop at a stop sign, 75 Pa.C.S. § 3323(b).  After careful review, we affirm.

Appellant proceeded to a non-jury trial on June 25, 2021.  The key issue at trial was whether Appellant was the operator of the vehicle on the night in question.   N.T. Trial, 6/25/21, at 3-4.[1]  The facts adduced at trial are as

_____

[*] Former Justice specially assigned to the Superior Court.

[1] At trial, Appellant did not contest that he was incapable of safe driving due to impairment from alcohol on the night in question.  *Id.* at 4 (Appellant's counsel stating that Appellant "is not saying that he wasn't inebriated.  He was….").

follows: On or about November 21, 2020, around 11:00 or 11:30 p.m., Adam Sheriff testified that he was on his way home from visiting his parents. *Id.* at 5. While stopped at an intersection, Mr. Sheriff stated that he saw a car go through a stop sign at about 40 miles per hour, swerve by him, and hit a telephone pole on Pine Grove Road. *Id.* at 6-7. Mr. Sheriff stated that he saw the car hit the telephone pole in his side mirror. *Id.* at 7, 10-11. When the crash happened, Mr. Sherriff explained,

> I immediately grabbed my phone. I started calling 911. I got out of my car. As I was dialing, I started walking towards their car. As I was walking toward their car, two men got out of the car. One of them yelled at me, just drive away, twice. I didn't know [if] I was safe because so many people carry [firearms] nowadays. So[,] I got back into my car, and I finished my 911 call from the car.
>
> [W]hile I was sitting in there, … I saw them run, I think, in different directions.

*Id.* at 7-8. Mr. Sheriff stated that one of the men "ran to the left, across the road, and one ran more towards the woods." *Id.* at 9. Mr. Sheriff denied seeing a third person in the vehicle or a third person run from scene of the crash. *Id.* However, on cross-examination, Mr. Sheriff conceded that, when he was calling 911, there was a time when he was not 'completely, 100 percent' staring at the accident scene and that it is possible that there could have been a third occupant that left the vehicle. *Id.* at 11-12. He noted, though, that a third occupant "would have had to run pretty fast for me not to see them." *Id.* at 12.

David Sproull testified next. Mr. Sproull conveyed that, in the late evening hours of November 21, 2020, he was heading to his mother's house after he got off work. *Id.* at 14. While traveling down Pine Grove Road, shortly before the intersection, he "noticed two men sitting on the left-hand side on the bank. I kind of slowed down, saw them, and was going to go up; and when I got up about another quarter mile or so, that is where the accident was." *Id.* At that point, Mr. Sproull pulled off to the side of the road and grabbed his flashlight, which he used to look inside the vacant car. *Id.* at 15. Upon looking in the car, Mr. Sproull stated that "[t]he airbags were deployed, both the airbags. [It l]ooked like there was blood on the driver's side airbag, and there were various cans and bottles on the floor and seat." *Id.* at 17. Mr. Sproull did not recall seeing blood on the passenger's side airbag. *Id.* He said he waited there until a gentleman from fire rescue showed up, and then they drove up the road to where Mr. Sproull had seen the two men sitting and waited for the police to arrive. *Id.* at 15. At trial, Mr. Sproull testified that he recognized Appellant as one of the men sitting alongside the road that night. *Id.* On the night of the accident, Mr. Sproull remembered that Appellant "had some blood around the nose or mouth…." *Id.* at 16.

Matthew David Wyant, a volunteer firefighter for Newport Firehouse, was called as the next witness. *Id.* at 19. On November 21, 2020, in the late evening, Mr. Wyant recalled responding to a call about a vehicle crash. *Id.* at 20. On his way to the accident scene, Mr. Wyant testified that he "saw two people sitting on the side of an embankment, which I thought was kind of

weird; but I left it go [and c]ontinued … to the scene." *Id.* at 21. Mr. Wyant then explained that,

> [w]hen I got to the scene, I was met by several people – and I'm assuming they are neighbors and bystanders – telling me that the people that were involved in that accident had taken off in the direction that I was coming from. Shortly after that, the fire department had pulled in; and I had told them what I witnessed about the two people prior and about being told that they took off. So … at that point, we had assumed that it was the people involved in the accident. They wanted me to go back and see if they were still there.
>
> [Mr. Sproull] got in my vehicle with me. We turned around, went back down the road, and that is where we met the two sitting on the side of the embankment.

*Id.* At trial, Mr. Wyant stated that he recognized Appellant because he was one of the two gentlemen sitting on the side of the road that evening. *Id.* at 22. Mr. Wyant recalled that Appellant's "lip or his nose was bloody, and I think his hand might have been cut up a little bit." *Id.* at 23. Mr. Wyant recounted that the two men "had told us that there was a third person involved in the accident; but while we were talking to them, they could not describe what he looked like, what he was wearing, or his name. They just tried telling us that there was a third person." *Id.* at 24. Mr. Wyant relayed that the two men indicated that the third person "continued to run on down the road or into the woods, that they were not sure." *Id.* Mr. Wyant testified that a trooper eventually arrived and took the two men. *Id.* at 23.

Mr. Wyant then returned to the accident scene where the car was located and tried to investigate further into whether a third person had been involved in the crash. *Id.* at 23-24. He explained that he used "a Thermal

Imaging Camera. We checked the vehicle from the front to the back; and as far as we were able to tell, the only hot spots … there [were] two of them, you know, up in the front [*sic*]." ***Id.*** at 24. In other words, Mr. Wyant represented that nothing had 'hit off' the back seat. ***Id.***

Trooper Alex Kaltenbach testified next. On November 21, 2020, he said he was working in the patrol unit at Newport Station when he was asked to respond to a vehicle crash in the area of Pine Grove Road. ***Id.*** at 27. Trooper Kaltenbach stated that he came upon Mr. Wyant, Mr. Sproull, Sebastian May, and Appellant, sitting on the side of the road a few hundred feet from the crash scene. ***Id.*** at 28. Trooper Kaltenbach asserted that the vehicle involved in the accident was registered to Appellant. ***Id.*** at 29. Trooper Kaltenbach testified that he asked Appellant who was driving the vehicle, and Appellant "basically said he didn't know who it was. It was – he said it was possibly – his name was Jameson (phonetic) or Jamie, along those lines. He couldn't really give me a good description of who was driving." ***Id.*** Trooper Kaltenbach said that he observed a small laceration on Appellant's forehead, right above the bridge of his nose, which appeared to have been bleeding at some point in time. ***Id.*** at 30-31.

Trooper Kaltenbach testified that he examined the vehicle involved in the crash and noticed that there was blood on the driver's side airbag. ***Id.*** at 31. He did not notice blood on any of the other airbags or anywhere else in the vehicle. ***Id.*** at 31. Trooper Kaltenbach also testified that the individual with Appellant on the night in question was Sebastian May. ***Id.*** at 31-32.

Trooper Kaltenbach described Mr. May as having "long, curly brown hair." ***Id.*** at 32. When asked if he had found any evidence indicating where Mr. May was positioned in the vehicle, Trooper Kaltenbach explained:

> So[,] I found … chunks of long, curly brown hair on the passenger's side floorboard, and I believe I found some on the … passenger's side seat as well. [A]nd then later, [Mr. May] ended up calling about wanting to get his things, including his alcohol, that he had left in the vehicle, which was on the passenger's side floorboard.

***Id.*** Trooper Kaltenbach noted that Appellant did not have curly brown hair at the time of the crash. ***Id.*** at 38.

On cross-examination, Trooper Kaltenbach acknowledged that it was possible that certain items in the vehicle may have been relocated due to the vehicle's impact. ***Id.*** at 33. Trooper Kaltenbach also recognized that, although the vehicle was registered to Appellant, Appellant and Mr. May had mentioned that the vehicle was gifted to Mr. May prior to the accident. ***Id.*** at 34. Following the accident, Trooper Kaltenbach noted that Mr. May had a leg injury, but said that he "didn't see any kind of facial injuries to [Mr. May] or anything like that. Nothing that stood out to me." ***Id.*** at 35. When asked why he believed Mr. May was the passenger in the vehicle and Appellant was the driver, Trooper Kaltenbach pointed to,

> the alcohol that [Mr. May] claimed was his; brown curly hair, chunks of it, on the passenger's side; and the fact that there was seat belt use on the passenger's side, and there was no seat belt use on the driver's side. And I observed injuries consistent with hitting your … face off of a steering wheel on [Appellant], and I did not see that kind of injury to [Mr. May].

***Id.*** Trooper Kaltenbach later elaborated:

- 6 -

[T]he injuries that I saw on [Appellant] are consistent with injuries for people that are involved in crashes and don't wear their seat belts; because what happens is they go forward, and they smack their faces[,] typically … the nose to forehead area[,] o[n] the steering wheel.

So[,] I didn't see that on [Mr. May], on the passenger; and there was seat belt use on the passenger's side and not the driver's side. So that is why.

***

[T]he seat belt on the driver's side was buckled in. … [T]he driver had it buckled … behind him. And in the passenger's seat, … the passenger's side seat belt was loose. So[,] it locks if you are in crash and there is airbag deployment. … I could tell it was being used because it was locked out.

*Id.* at 38-39. In addition, Trooper Kaltenbach agreed that Mr. May was highly

intoxicated on the night in question, making it very unlikely that he was the

driver. *Id.* at 37. Finally, Trooper Kaltenbach admitted that a portion of the

driver's side airbag was removed but was not sent in for DNA testing, and that

no photographs were taken of Appellant's injuries. *Id.* at 36-37.

At the conclusion of trial, the trial court found Appellant guilty of the

above-stated offenses. In rendering its decision, the trial court explained:

First of all, … I don't believe there was a third person in the vehicle. I take the testimony of the firefighter. I find it to be very credible that[,] when they did the [Thermal Imaging Camera] scan, there was no heat in the back seat but only in the driver's side and the passenger's side. So[,] I am ruling out that there was a third person.

As far as whether or not [Appellant] was driving, I do find that the Commonwealth has met its burden beyond a reasonable doubt based on the testimony of the [t]rooper and the testimony of the other witnesses that there was blood on [Appellant's] face, none on Mr. May's face[, and] that the airbag on the driver's side had blood on it. Also[,] that the restraint system in the passenger's side had obviously been working and had kept the passenger from

- 7 -

hitting the dashboard. Also, the fact that the alcohol … and this … was a little strange, for someone to call and ask to have his alcohol returned to him in a crash, was found on the passenger's side.

Based on the testimony of the first witness, I find that [Appellant] also failed to stop at the stop sign. The witness's testimony was he blew through the stop sign.

And then … [d]isregarding a [t]raffic [l]ane, I find him guilty of that.

*Id.* at 46-47.

Following trial, on July 22, 2021, Appellant filed a motion to vacate the verdict and requested a new trial. In his motion, he claimed that on July 19, 2021, he received a call from a Grant Bassett, indicating that Mr. Bassett had witnessed Appellant leave a party on the night in question and get into the passenger's side of the vehicle. ***See*** Motion to Vacate Verdict/Request for New Trial, 7/22/21, at 1 (unnumbered pages). The trial court subsequently denied that motion on August 19, 2021.

On November 12, 2021, Appellant was sentenced to, *inter alia*, 48 hours' to six months' incarceration. On November 30, 2021, Appellant filed a timely notice of appeal.[2] The trial court then ordered Appellant to submit a concise

---

[2] In Appellant's notice of appeal, he purported to appeal from "a guilty verdict entered June 25, 2021 after a non-jury trial and post[-]sentencing motion denied August 19, 2021[.]" Appellant's Notice of Appeal, 11/30/21, at 1 (unnumbered pages; unnecessary capitalization omitted). However, "it is well settled that in criminal cases appeals lie from judgment of sentence rather than from the verdict of guilt…." ***Commonwealth v. O'Neill***, 578 A.2d 1334, 1335 (Pa. Super. 1990) (citations omitted). Further, while Appellant states that the trial court denied his post-sentence motion on August 19, 2021, the motion denied on that date was a post-verdict motion. Appellant did not file a post-sentence motion.

statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b),

and he timely complied.  The trial court later issued a Rule 1925(a) opinion.

On appeal, Appellant raises a single issue for our review:

> Whether or not the evidence introduced at the non-jury trial was sufficient to prove beyond a reasonable doubt [that] Appellant had been operating a motor vehicle while under the influence?

Appellant's Brief at 8 (unnecessary capitalization omitted).

Appellant challenges the sufficiency of the evidence to sustain his DUI

conviction.  We apply the following standard of review for such claims:

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review.  When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner.  Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Teems*, 74 A.3d 142, 144-45 (Pa. Super. 2013) (citation

omitted).

Appellant was convicted of DUI under Section 3802(a)(1).  Section

3802(a)(1) sets forth the following:

> **(a) General impairment.--**
>
> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

Appellant argues that "[t]he Commonwealth presented insufficient evidence to prove beyond a reasonable doubt [that] Appellant operated a motor vehicle while under the influence." Appellant's Brief at 10. He asserts that "[n]either [the t]rooper or witnesses observed … Appellant operating the vehicle[,]" and claims that "[n]o physical evidence placed … Appellant as the operator. No testing of the blood on the driver's side airbag was done to demonstrate that Appellant was the operator at the time of the crash as alleged…." *Id.* Appellant also emphasizes that he had gifted the vehicle to Mr. May, and that a witness came forward after the trial with information that Appellant was not the driver on the night in question. *See id.* at 14-15.[3]

No relief is due. This Court has previously explained that "[u]nder Pennsylvania law, an eyewitness is not required to establish that a defendant

---

[3] We point out that Appellant's argument on appeal regarding Grant Bassett does not entirely conform with the post-verdict motion he filed with the trial court. In his brief, Appellant claims that "a party did come forward after trial to indicate to counsel that he was the driver of the vehicle that evening." Appellant's Brief at 15; *see also id.* at 10 (alleging that an individual came forward after trial and "stated he was the operator"); *id.* at 13 ("[Appellant's] counsel received a phone call from a Grant Bassett on July 19, 2021. He indicated to counsel that he was the operator of the vehicle and that [Appellant] was the passenger."). However, in his Motion to Vacate Verdict/Request for New Trial filed with the trial court, Appellant averred that "[c]ounsel received a call from a Grant Bassett on July 19th indicating that he witnessed [Appellant] leave the party and get into the passenger side of the vehicle." *See* Motion to Vacate Verdict/Request for New Trial at 1 (unnumbered pages). In that motion, Appellant did not advance that Mr. Bassett purported to be the driver of the vehicle on the night in question. Thus, Appellant's argument on appeal regarding this after-discovered evidence does not align exactly with what he represented below.

was driving, operating, or was in actual physical control of a motor vehicle. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." **Commonwealth v. Johnson**, 833 A.2d 260, 263 (Pa. Super. 2003). Further, as the Commonwealth aptly observes,

> [t]he trial court properly found sufficient circumstantial evidence to identify Appellant, and not his passenger, as the intoxicated driver of the car…. That evidence included the facts that the car was registered to Appellant; that the driver's side airbag had blood on it, and Appellant had blood on his lip, nose and forehead (and the passenger had no visible blood wounds); that the driver's side seat belt was not in use at the time of the crash, but the passenger's side was; that clumps of hair matching the passenger's hair was found on the passenger side seat and floorboard, but not the driver's side; that Appellant denied knowledge of, and could not describe, an unidentified third party who he claimed was the driver; and that the passenger later called the police to request the return of alcohol that he had left in the passenger side of the vehicle, where it had been observed by the investigating state trooper at the scene.

Commonwealth's Brief at 1. We agree with the Commonwealth that this evidence was sufficient to conclude that Appellant was operating the vehicle on the night in question. **See Teems**, 74 A.3d at 148 ("[O]ur jurisprudence does not require fact-finders to suspend their powers of logical reasoning or common sense in the absence of direct evidence. Instead, juries may make reasonable inferences from circumstantial evidence introduced at trial.") (citation omitted). Accordingly, we affirm Appellant's judgment of sentence.[4]

---

[4] To the extent Appellant challenges the weight of the evidence underlying his conviction, we would deem this claim waived, as Appellant has not

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/26/2022

_____

demonstrated that he preserved it for our review. **See** Pa.R.A.P. 2117(c) (requiring, where an issue is not reviewable on appeal unless raised or preserved below, a statement of place of raising or preservation of issues); Pa.R.A.P. 2119(e) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information"); **see, e.g.**, **Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012) ("[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver….") (citations omitted). Moreover, our own independent review of the record does not reveal that Appellant properly raised a weight-of-the-evidence claim below.