J-S20009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANNY LEE LOWER | : | |
| | : | |
| Appellant | : | No. 761 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 16, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0000486-2022

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: SEPTEMBER 30, 2024**

Appellant, Danny Lee Lower, appeals from the judgment of sentence entered May 16, 2023.  We affirm.

The trial court summarized the relevant facts of this case as follows:

> On August 20[,] 2021, at approximately 10:20 [p.m.], Officer Bradley McAlester [of the East Pennsboro Township Police] was on patrol in a marked police vehicle when he observed a motorized bicycle[1] swerving between the road and the right

---

[*] Former Justice specially assigned to the Superior Court.

[1] At Appellant's trial, the parties discussed whether Appellant was operating a bicycle or motorcycle.  Officer McAlester indicted that, after Appellant's arrest, he determined that the vehicle qualified as a motorcycle because it had a 79 CC engine.  **See** N.T. Trial, 4/3/23, at 10; **see also** Trial Court Opinion, 7/7/23, at 2, n.1.  As pointed out in the Commonwealth's brief, however, whether Appellant's vehicle is a bicycle or motorcycle "is a distinction without a difference" because both fall under the definition of "vehicle" as set forth in the Motor Vehicle Code.  Commonwealth's Brief at 3, n.3; **see also** 75 Pa.C.S.A. 102; **Commonwealth v. Brown**, 620 A.2d 1213, 1215 (Pa. Super. 1993) (holding that a bicycle "clearly f[e]ll[] within the confines of [the] definition" set forth in Section 102 of the Motor Vehicle Code).

shoulder, with its rear lights and headlights turned off. [Upon] observing this [motorized bicycle driving] in an erratic and unsafe manner, at night, with its operating lights off, Officer McAlester initiated a traffic stop. Even with his patrol vehicle's lights and sirens on, it took the driver of the [motorized bicycle], later confirmed to be [Appellant], over a minute to pull over.

[When] Appellant [finally] came to a halt[,] Officer McAlester began speaking with him[. I]t quickly became apparent that Appellant was unsteady on his feet. [Indeed,] the Motor Vehicle Recording (hereinafter "MVR") [demonstrated] Appellant almost falling over on several occasions during his interaction with Officer McAlester. As a result, Officer McAlester [asked] Appellant [if he consumed] alcohol or [any] controlled substances [that evening]. Appellant admitted to consuming one beer that evening. … Officer McAlester [then] radioed for backup and [conveyed his belief] that Appellant was driving [the motorized bicycle] while under the influence.

[A] second law enforcement officer arrived on-scene [shortly thereafter and directed Appellant] to perform Standard Field Sobriety Tests (hereinafter "SFSTs"). At that time, Appellant [told] the officers . . . that he crashed his [motorized bicycle] earlier in the evening, [and] display[ed] visible injuries including blood on his knee and a swollen ankle. Because of [Appellant's] injuries, the officers selected SFSTs [that] would not require Appellant to use his injured leg. [In particular,] Appellant was asked to perform a one-leg stand[] and divided attention test[. When] Appellant performed [the aforementioned] SFSTs, the officers noted "clues" indicating impairment for both tests. Specifically, Appellant was unable to perform the one-leg stand[] and Appellant was unable to keep his head still while tracking Officer McAlester's finger. [In addition to the SFSTs performed], Officer McAlester prepared his portable breathalyzer (hereinafter "PBT") machine and directed Appellant to perform a PBT test. The test gave a positive return for the presence of alcohol. Thereafter, Appellant was arrested for driving under the influence [("DUI")] and [other] related charges.

Trial Court Opinion, 7/7/23, at 2-4 (footnote added) (parallel citations and footnotes omitted).

On April 3, 2023, a non-jury trial was conducted during which Officer McAlester and Appellant testified. Ultimately, Appellant was convicted of DUI – general impairment and driving under suspension - DUI related.[2] On May 16, 2023, the trial court sentenced Appellant to pay the cost of prosecution, a total fine of $1,300.00,[3] and to undergo a period of supervision for six months. This timely appeal followed.

Appellant raises the following issue on appeal:

> Was the evidence sufficient to find Appellant guilty of [DUI -] general impairment[] in that[] the Commonwealth failed to establish, beyond a reasonable doubt, [that Appellant was incapable of safe driving]?

Appellant's Brief at 6.

Herein, Appellant claims that the Commonwealth presented insufficient evidence to support his conviction for DUI – general impairment. More specifically, Appellant argues that the Commonwealth failed to "sufficiently show that he was incapable of safely riding his [motorized bicycle]" because he "conducted himself well enough" during the interaction with Officer McAlester. Appellant's Brief at 27.

_____

[2] 75 Pa.C.S.A. § 3802(a)(1) and 75 Pa.C.S.A. § 1543(b)(1)(ii), respectively.

[3] A review of the sentencing transcripts reveals that Appellant's counsel invited the trial court to impose fines and costs, that the trial court specified the amount of fines Appellant was required to pay, and Appellant had the opportunity to be heard on the subject. **See** N.T. Sentencing Hearing, 5/16/23, at 2-3. As such, we find that the trial court complied with 42 Pa.C.S.A. § 9726(c) (explaining that a trial court "shall not sentence a defendant to pay a fine unless it appears of record that the defendant is or will be able to pay it.").

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

Appellant was convicted of violating 75 Pa.C.S.A. § 3802(a)(1). Subsection 3802(a)(1) of the Motor Vehicle Code declares:

> **(a) General impairment.**--(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

This Court previously explained:

- 4 -

[T]he Commonwealth [must] prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol. With respect to the type, quantum, and quality of evidence required to prove a general impairment violation under Section 3802(a)(1), the Pennsylvania Supreme Court [has previously stated]:

Section 3802(a)(1) . . . is a general [impairment] provision and[, as such, imposes] no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving. ... The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two[-]hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol - not on a particular blood alcohol level.

*Commonwealth v. Teems*, 74 A.3d 142, 145 (Pa. Super. 2013) (citations omitted).

Upon review, we conclude that Appellant is not entitled to relief. Indeed, at trial, the Commonwealth presented evidence and testimony demonstrating

that, when Officer McAlester first encountered Appellant, he was "swerving in between the lines of the roadway, while his vehicle's operating lights were turned off, at night." Trial Court Opinion, 7/7/23, at 6. Officer McAlester initiated a traffic stop, but it took Appellant approximately a minute to pull over. Officer McAlester then approached Appellant who was "wearing sunglasses, despite it being almost 10:30 [p.m.]." *Id.* at 7. Upon approach, Officer McAlester noted that Appellant exhibited signs of intoxication including bloodshot eyes, slurred speech, and an unsteady gait. Officer McAlester also stated that he detected an odor of alcohol emanating from Appellant's person. Officer McAlester asked Appellant if he consumed any alcohol and Appellant admitted to drinking "one beer" earlier that evening. N.T. Trial, 4/3/23, at 15. In addition, Appellant informed Officer McAlester that he was just involved in an accident on his motorized bicycle, resulting in an injury to his ankle and knee. Based upon the forgoing, Officer McAlester asked Appellant to perform two SFSTs, namely, a one-leg stand and a divided attention test, both of which Appellant was unable to perform. Finally, Officer McAlester directed Appellant to perform a PBT test which revealed the presence of alcohol. Thus, viewing the aforementioned evidence in a light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for DUI – general impairment.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/30/2024