J-S27021-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER ALBERT KOGER | : | |
| | : | |
| Appellant | : | No. 1428 WDA 2018 |

Appeal from the Judgment of Sentence Entered May 11, 2018
In the Court of Common Pleas of Washington County
Criminal Division at No(s):  CP-63-CR-0002715-2017

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY OTT, J.:                    FILED AUGUST 19, 2019

Christopher Albert Koger appeals, nunc pro tunc, from the judgment of sentence imposed May 11, 2018, in the Washington County Court of Common Pleas.  Koger was sentenced to a term of six months county intermediate punishment, with five days of incarceration, and a $1,000.00 fine, after the trial court, sitting without a jury, found him guilty of driving under the influence of alcohol ("DUI") - highest rate of alcohol.  See 75 Pa.C.S. § 3802(c).  On appeal, he challenges the sufficiency and weight of the evidence.  Because we agree the evidence was insufficient to establish Koger's conviction of DUI – highest rate of alcohol, we are compelled to reverse the judgment of sentence.

The facts underlying Koger's arrest and conviction were aptly summarized by the trial court as follows:

_____
*   Retired Senior Judge assigned to the Superior Court.

On July 29, 2017, at approximately 2:09 AM, Trooper Michael Short and Trooper Tyler Parkes of the Pennsylvania State Police were dispatched to the intersection of Caldwell Avenue and Green Street in Canton Township, Washington County. The troopers arrived on scene at approximately 2:21 AM at which point they discovered a red Cadillac DeVille marooned in the intersection by flood waters. The troopers observed [Koger] standing at the intersection of Caldwell Avenue and Green Street under a bridge approximately 50 to 75 yards away from his vehicle. When the troopers approached [Koger], he was barefoot, dressed in shorts that were soaked in water around the knee area. When Trooper Short asked [Koger] what was going on, [Koger] stated that he had been driving home from work when he stopped to have a couple of drinks at Arch's Bar. [Koger] stated that he left Arch's Bar to drive home and it was at that point he drove into the flooded area where the car was now stuck. While speaking with [Koger], Trooper Short noticed that [Koger] was slurring his speech, his eyes were glassy, and he had a moderate odor of alcohol emanating from his breath. Trooper Short conducted a Standardized Field Sobriety Test, as well as a preliminary breath test, which [Koger] failed, at which time he was placed under arrest. [Koger] then submitted to a blood alcohol test [at 3:15 a.m.] which revealed a BAC of .174.

Trial Court Opinion, 11/28/2018, at 1-2 (footnotes with record citations omitted).

Koger was subsequently charged with two counts of DUI - highest rate of alcohol and general impairment - and two summary offenses.[1] On April 6, 2018, the trial court, sitting without a jury, found Koger guilty of DUI – highest rate of alcohol.[2] On May 11, 2018, the court sentenced Koger to a term of six

_____

[1] See 75 Pa.C.S. §§ 3802(c) and (a)(1), 3111.1(a) ("Obedience to traffic-control devices warning of hazardous conditions"), and 3714(a) ("Careless driving").

[2] The court found him not guilty of the summary offenses.

months' county intermediate punishment, with five days' incarceration, and a $1,000.00 fine.

On May 22, 2018, the 11th day after sentencing, Koger's attorney filed both a motion to withdraw and a post-sentence motion. No action was taken on either motion.[3] On July 27, 2018, Koger's attorney filed both motions a second time. Again, no action was taken by the trial court. Shortly thereafter, Koger was approved for representation by the Public Defender's Office. On August 28, 2018, Koger's public defender filed a petition for leave to file an appeal nunc pro tunc, asserting that Koger informed his trial counsel he wanted to file an appeal, and counsel failed to do so in a timely manner. The trial court granted the motion on September 4, 2018. Present counsel entered his appearance, and filed this timely, nunc pro tunc appeal, on October 1, 2018.[4]

_____

[3] In its opinion, the trial court stated that counsel filed the motion to withdraw with a "notice of presentation for May 24, 2018." Trial Court Opinion, 11/28/2018, at 3. However, because counsel "never presented the motion to the trial court, there was no further action taken upon it." Id. Indeed, attached to the motions was a "Notice of Presentment" signed by trial counsel, which stated he would "present the attached motion to the [trial court] on Thursday, May 24, 2018." Notice of Presentment, 5/22/2018. Our research has uncovered no state or local rule requiring an attorney to formally "present" a motion to the court in addition to filing it in the proper office.

[4] On October 19, 2018, the trial court ordered Koger to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Koger complied with the court's directive, and filed a concise statement on November 6, 2018.

In his first issue, Koger contends the evidence was insufficient to sustain his conviction under Section 3802(c) of the Motor Vehicle Code. See Koger's Brief at 14-16. Specifically, he argues the Commonwealth failed to prove his blood alcohol content (BAC) was more than 0.16% within two hours of driving. See id. at 14. While he concedes his BAC was 0.174% at 3:15 a.m., Kroger maintains the Commonwealth presented no evidence, direct or circumstantial, to establish that he drove his vehicle after 1:15 a.m. See id. at 14-15. Moreover, he insists the Commonwealth also failed to establish the exception to the two-hour rule set forth in Subsection 3802(g).

Our review of a claim challenging the sufficiency of the evidence is well-established:

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Teems, 74 A.3d 142, 144–145 (Pa. Super. 2013) (quotation omitted), appeal denied, 79 A.3d 1098 (Pa. 2013).

In the present case, Koger was convicted only of DUI – highest rate of alcohol. Subsection 3802(c) of the Motor Vehicle Code provides as follows:

(c) Highest rate of alcohol.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c). Accordingly, in order to obtain a conviction under Subsection 3802(c), the Commonwealth must prove (1) the defendant "drove, operated or was in actual physical control of a motor vehicle[,]" and he did so "after imbibing enough alcohol that [his] BAC reached 0.16% within two hours after driving." Commonwealth v. Thur, 906 A.2d 552, 564 (Pa. Super. 2006), appeal denied, 946 A.2d 687 (Pa. 2008).

Because Koger's BAC was obtained at 3:15 a.m., the Commonwealth was required to prove Koger drove, or was in actual physical control of his vehicle, no earlier than 1:15 a.m. By way of background, we note that Koger testified in his own defense at trial and claimed his car became stranded "[s]omewhere around" 11:30 p.m. to midnight. N.T., 4/6/2018, at 41. He stated that after he was stranded, he went to the bar and "tried to call for a ride home," but "couldn't get in touch with anyone." Id. at 42. Koger claimed he then had "some beers because [he] knew [he] wasn't driving that night[.]" Id. He stated he left the bar and walked to the scene, which is when the officers arrived. See id.

In concluding the evidence was sufficient to establish the two-hour time frame, the trial court opined:

[Koger] testified that he believed his vehicle became stranded between 11:30 PM and midnight. Trooper Short testified that he was dispatched to the scene with Trooper Parkes around 2:09 AM

- 5 -

and arrived on scene at approximately 2:21 AM. Additionally, Trooper Short testified that, following the failure of the Standardized Field Sobriety Test, [Koger] was placed under arrest for suspicion of DUI and taken to the Washington Hospital where a blood draw was conducted at 3:15 AM. Despite [Koger's] testimony, the trial court found circumstantial evidence, including [Koger] being barefoot and in wet clothes, to conclude that [Koger] was discovered promptly after driving his car into the flooded roadway, not two hours later as [Koger] claimed. Thus, the blood draw occurred within two hours of [Koger's] driving.

Trial Court Opinion, 11/28/2018, at 7.

While the trial court, sitting as fact finder, was entitled to disbelieve Koger's testimony regarding the sequence of events on the night in question, the Commonwealth was still obligated to prove, beyond a reasonable doubt, that Koger's BAC level was 0.16% or higher within two hours of driving. Here, the evidence presented by the Commonwealth at trial revealed the troopers were dispatched to the scene at 2:09 a.m., and arrived at 2:21 a.m. N.T., 4/6/2018, at 12. When they arrived, they found Koger's car stranded in floodwaters, and Koger standing about 50 feet away under a bridge. See id. at 13. Trooper Short testified it had been raining "[t]hroughout the night." Id. He observed Koger was wearing shorts that "were soaked at around the knee area[ a]nd his shoes were off." Id. at 14. Trooper Short stated Koger told him "he was on his way home from work, stopped at Arch's Bar, had a couple of drinks, and then left Arch's Bar to go home. And that's when his vehicle got stuck." Id. at 15. As noted above, within an hour of the trooper's arrival at the scene, Koger's BAC level registered at 0.174%.

Accepting as true the Commonwealth's version of the events, we still find the evidence was insufficient to establish Koger's BAC level was at least 0.16% within two hours of driving. Although Trooper Short testified Koger told the trooper he stopped at the bar before driving into the floodwaters, the Commonwealth was unable to establish, even circumstantially, when Koger last drove his vehicle. Under cross-examination, Trooper Short acknowledged that he did not know when the vehicle became disabled, when the 911 call came in or who placed the 911 call. See id. at 25. Further, Trooper Parkes testified it was his "understanding" that the fire department or emergency medical service "had already been on scene and they were the ones who … forwarded the call to us." Id. at 37. He admitted, however, he had no idea what time they were on the scene, what they observed, or when they left. See id. Moreover, there was no testimony the car was running when the troopers arrived, and no witness from the bar to establish when Koger had been drinking. Although the fact Koger's shorts were soaked at the knee might suggest he waded from the car to the bridge, Trooper Short testified it had been "raining heavy out … [t]hroughout the night." Id. at 13. There was simply no evidence to suggest when Koger abandoned his vehicle. Accordingly, we conclude the Commonwealth failed to establish beyond a reasonable doubt that Koger had been driving or in control of his vehicle after 1:15 a.m.

This Court's decision in Commonwealth v. Teems, 74 A.3d 142 (Pa. Super. 2013), appeal denied, 79 A.3d 1098 (Pa. 2013), is instructive. In that

case, a panel of this Court found sufficient circumstantial evidence to support the defendant's conviction of DUI – high rate of alcohol, despite the fact there was no evidence pinpointing when the accident occurred. The police were dispatched to the accident scene at 2:00 a.m. When they arrived, they observed the defendant's vehicle broken down in the right lane of Interstate 81. The vehicle's lights were on, and the defendant was seated in the driver's seat. After he was arrested for DUI, the defendant was transported to the hospital where a test conducted at 3:00 a.m. revealed a BAC of .143%. See id. at 143-144. After his conviction of DUI – high rate of alcohol, the defendant appealed to this Court. The panel affirmed the conviction, concluding there was sufficient evidence to prove, circumstantially, that the BAC level was obtained within the required two-hour time frame. See id. at 149. The panel opined:

> Only if one accepts as reasonable the notion that [the defendant's] damaged and immobilized car came to a stop on Interstate 81 before 1:00 a.m. early Sunday morning—more than two hours before the 3:00 a.m. blood draw—and sat there for over one hour before [the troopers] were dispatched to the scene, may one accept [the defendant's] claim on appeal.
>
> To this contention we apply the same rationale offered to resolve the first sufficiency challenge—that sufficient circumstantial evidence existed regarding the severity of the accident, the position of [the defendant's] car in a travel lane of a major artery near a population center, and the time of the accident (some time prior to 2:00 a.m. (the time of dispatch) on a Saturday night)—to conclude it was extremely doubtful that more than one hour passed from the time of the accident to the time of emergency response at the scene. It strains credulity to suggest that traffic was so infrequent at this metropolitan location of Interstate 81 during a late Saturday night that an eyewitness 911 call would not

have occurred within minutes of the accident to report such an inherently dangerous situation on the highway. It is similarly beyond reason to conclude that an emergency call center would have delayed dispatch to the scene. Accordingly, we conclude the evidence sufficed to allow the inference that [the defendant's] blood draw occurred within two hours of the time of his accident.

Id. See also id. at 148 (noting "[t[he area in question was not a remote, secondary or tertiary roadway in a rural setting; it was, instead a major artery running immediately adjacent to the Chambersburg metropolitan area at Exit 17").

We do not find the facts in this case mandate the same result. Here, there was no testimony establishing when Koger drove the vehicle on the night in question, and no testimony that the flooded roadway where his car was disabled was so well traveled that the 911 call would have been made shortly after the vehicle was abandoned. Furthermore, here, when the troopers arrived, Koger was standing under a bridge away from the vehicle. He was not sitting in the driver's seat with the brake lights on. See Teems, supra. Accordingly, we conclude the evidence was insufficient to prove Koger was driving or in control of his vehicle within two hours of the blood draw.

However, the trial court also found that, even if it accepted Koger's testimony that he did not drive after midnight, the exception to the two-hour rule set forth in Subsection 3802(g) applied. See Trial Court Opinion, 11/28/2018, at 8. That subsection provides, in relevant part:

> (g) Exception to two-hour rule.--Notwithstanding the provisions of subsection ... (c) ... where alcohol ... concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than

two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:

> (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and

> (2) where the Commonwealth establishes that the individual did not imbibe any alcohol ... between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S. § 3802(g).

With regard to the applicability of the two-hour exception, the court opined:

> Despite the possibility that [Koger's] blood draw may have happened more than two hours after his car had become stranded, the trial court found good cause for the delay in the blood draw. Trooper Short and Trooper Parkes placed [Koger] under arrest and had him at the hospital for a blood draw within an hour of finding him at the scene. Additionally, there is no credible evidence that [Koger] imbibed any alcohol between the time he was arrested and the time of the blood draw. Therefore, the trial court submits that the Commonwealth provided sufficient evident that [Koger] was guilty of DUI of the highest rate.

Trial Court Opinion, 11/28/2018, at 8.

Our research has uncovered very few published decisions interpreting the exception to the two hour rule. To the extent Koger argues the exception is waived because the Commonwealth did not explicitly raise it during trial, we find no support for this claim. So long as the evidence shows good cause for the delay in testing, and no alcohol consumption by the defendant after his arrest, we conclude the exception may apply.

Nevertheless, here, we disagree with the court's determination that the evidence demonstrated "good cause for the delay in the blood draw" based solely on the fact that the troopers obtained the blood draw within an hour of encountering Koger at the scene. Trial Court Opinion, 11/28/2018, at 8. In the decisions in which this Court has found the two-hour exception applicable, there has been at least some evidence establishing when the defendant last drove the vehicle in question.

In Commonwealth v. Eichler, 133 A.3d 775 (Pa. Super. 2016), appeal denied, 161 A.3d 791 (Pa. 2016), a panel of this Court considered whether the trial court erred in failing to suppress the defendant's blood test results, which were obtained more than two hours after he struck a wheelchair-bound pedestrian with his vehicle. In that case, shortly before 6:00 p.m., an eyewitness observed the defendant strike something on the roadway, and flee in his truck. A fender wall from the truck fell off and remained at the scene. An officer responded almost immediately, and traced the fender wall to a black Nissan pickup truck. Shortly thereafter, he was alerted by another witness that a truck matching that description was parked in the driveway of a nearby house. See id. at 780-781. The officer was familiar with the residence and the defendant, and knew the defendant drove a black Nissan pickup truck. When the officer arrived at the residence at 7:16 p.m., the defendant exited the house and appeared "visibly highly intoxicated." Id. at 781. After confirming fresh damage on the front of the pickup truck, and noting the engine was still warm, the officer placed the defendant under arrest. A blood

test was administered at 8:12 p.m., and registered at .30%. See id. at 782, 791. The arresting officers testified that the defendant "did not consume any alcoholic beverages between the time of his arrest and time of the blood draw."[5] Id.

On appeal, the panel concluded the test results were admissible pursuant to the Section 3802(g) exception:

> Eichler's flight from the accident scene, and the consequential delay in finding him, constituted good cause for the failure to obtain his blood test within two hours after he stopped driving. The Commonwealth fulfilled section 3802(g)'s no-imbibing element by presenting the testimony of three officers during trial that Eichler did not drink alcohol between the time of his arrest and the time of his blood test.

Id. at 786–787.

Therefore, in Eichler, unlike in the present case, there was direct testimony concerning when the defendant last drove the vehicle. That testimony, coupled with the defendant's actions in fleeing the scene and the detailed testimony concerning the investigation that followed, provided a factual basis for the court to determine the Commonwealth demonstrated good cause for the delay in obtaining the chemical test sample. Furthermore, in Eichler, the Commonwealth presented direct testimony that the defendant did not drink any alcoholic beverage after his arrest. Although the trial court

---

[5] We emphasize the two hour exception in Subsection 3802(g) requires the Commonwealth establish only that the defendant did not consume any alcohol between the time of his arrest and the blood draw. See 75 Pa.C.S. § 3802(g)(2). It does not account for any alcohol the defendant may have consumed after an accident and before an arrest.

in the present case found there was "no credible evidence that [Koger] imbibed any alcohol" during that time, we emphasize the absence of direct testimony by the arresting officers. See Trial Court Opinion, 11/28/2018, at 8.

In Commonwealth v. Starry, 196 A.3d 649 (Pa. Super. 2018), appeal granted, 204 A.3d 369 (Pa. 2019),[6] a panel of this Court considered whether the trial court erred in granting the defendant's petition for writ of habeas corpus, and dismissing with prejudice a charge of DUI – highest rate of alcohol, based upon a violation of the two-hour rule. In that case, the

_____

[6] The Pennsylvania Supreme Court granted allocator review on the following issues:

> (1) Whether the rationale and holding in Commonwealth v. Segida, 604 Pa. 103, 985 A.2d 871 (2009), applies to a charge of driving under the influence brought pursuant to 75 Pa.C.S. § 3802(c), which has a statutory requirement that the defendant have an alcohol concentration in his or her blood or breath of .16% or greater within two hours after driving, operating or being in actual physical control of the movement of a vehicle.

> (2) Whether the Superior Court erred by finding that the Commonwealth presented prima facie evidence that Petitioner's blood alcohol concentration was .16% or higher within two hours after she drove, operated or was in actual physical control of the movement of a vehicle.

> (3) Whether the Superior Court erred in finding that the Commonwealth presented prima facie evidence to satisfy 75 Pa.C.S. § 3802(g)(1), which requires the Commonwealth to show "good cause explaining why the chemical test sample could not be obtained within two hours."

Starry, supra, 204 A.3d at 370. At this time, however, this Court's decision in Starry is controlling.

evidence established that the defendant began driving at 11:00 a.m. A witness called 911 at 11:49 a.m. to report a vehicle had crashed into a tree. The first responders found the defendant sleeping in the back seat of the vehicle, and the only footprints in the snowy area of the crash were of the witness who called 911. The responding state trooper, who arrived at 12:36 p.m., believed the defendant was under the influence of alcohol. He testified that from the time of his arrival until the defendant was transported to the hospital by ambulance at 12:56 p.m., the defendant did not consume any alcohol. The defendant's blood draw at 1:40 p.m. produced a BAC of .304%. See id. at 651-652.

On appeal, the panel concluded the trial court had erred in dismissing the DUI charge. First, the panel found the Commonwealth presented sufficient evidence to establish a prima facie case violation of Subsection 3802(c):

> In the instant case, there was no evidence of the exact time of the accident. However, the Commonwealth presented the following facts. [A witness] notified state police that [the defendant] had left [his] residence in her vehicle at 11:00 a.m. on a Sunday morning. [Another witness] called 911 at 11:49 a.m. to report a crashed vehicle along a regularly traveled county road. Upon arrival, first responders noted the vehicle along the berm of the road where it had impacted a tree. Trooper Adamski arrived at 12:36 p.m. and the ambulance was already at the scene providing medical attention to [the defendant]. [The defendant] was taken to the hospital by the ambulance at 12:56 p.m.; and the hospital performed a blood draw at 1:40 p.m., which revealed a BAC of .304%.
>
> Thus, [the defendant's] blood was drawn 1 hour and 51 minutes after the accident was first reported. Although the exact time of the accident was unknown, the severity, timing, and location of the accident gives rise to a reasonable inference that accident

occurred at or near the time the first caller reported it at 11:49 a.m. Further, the testing of the blood drawn at 1:40 p.m. revealed [the defendant's] BAC was .304%. The fact-finder would not be required to suspend common sense and ignore [the defendant's] enormously elevated BAC.

Id. at 658–659 (citations and footnote omitted). Further, the panel concluded that even if the blood draw was conducted outside the two-hour time frame, the Commonwealth also presented sufficient evidence to establish the two-hour exception. See id. at 661 (holding (1) "the removal of a defendant to a hospital so that she be provided proper treatment constitutes good cause for the delay in obtaining a blood sample within two hours," and (2) "the Commonwealth met the 'no imbibing' requirement when" the arresting officer testified the defendant did not consume any alcohol from "the time he arrived until she was taken to the hospital where the blood draw was performed.").

Accordingly, in Starry, unlike in the present case, there was testimony concerning what time the defendant began driving before the accident, as well as testimony that the "road where the accident occurred was a county road that was regularly traveled by people who live in the area," so that it was likely the witness who called 911 at 11:49 a.m. came upon the accident shortly after it had occurred. Id. at 652. Indeed, the blood draw was conducted less than two hours after the accident was first reported.

Conversely, in the present case, there was simply no evidence, direct or circumstantial, to establish when Koger last drove his vehicle, when he last drank alcohol, or how long the car was disabled before the troopers arrived. Moreover, we note that while it seems logical to assume Koger did not drink

any alcohol between the time of his arrest and the time of the blood draw, the Commonwealth presented no testimony to confirm this. Accordingly, based upon the facts developed at Koger's trial, we agree the Commonwealth failed to prove the exception to the two-hour blood draw applied in the present case.

Therefore, because we conclude the evidence was insufficient to sustain Koger's only conviction of DUI – highest rate of alcohol, we are constrained to reverse the judgment of sentence.[7]

Judgment of sentence reversed. Jurisdiction relinquished.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: __8/19/2019__

_____

[7] Because of our disposition of this claim, we need not address Koger's weight of the evidence challenge.