J-S58019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PAUL ROBERT SIEMINKEWICZ | : | |
| | : | |
| Appellant | : | No. 385 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 26, 2018
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001831-2014

BEFORE: PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED JANUARY 31, 2020**

Appellant, Paul Robert Sieminkewicz, appeals from the judgment of sentence of six months' probation, imposed after he was convicted of driving under the influence of alcohol or controlled substance (DUI) - general impairment, 75 Pa.C.S. § 3802(a)(1), and failing to properly use signals on turning and starting, 75 Pa.C.S. § 3334(b).[1]  We affirm.

The trial court summarized the procedural and factual background of this case as follows:

> [Appellant] was charged with the following as a result of an incident that occurred on January 27, 2014:

---

[1] Appellant purports to appeal from the trial court's February 25, 2019 order denying his post-sentence motion. **See** Notice of Appeal, 3/5/2019. However, "[a] direct appeal in a criminal proceeding lies from the judgment of sentence." **Commonwealth v. Patterson**, 940 A.2d 493, 497 (Pa. Super. 2007) (citation omitted). We have amended the caption accordingly.

**Count 1:** Driving Under the Influence of Alcohol or Controlled Substance, in violation of 75 Pa.C.S.[] § 3802(a)(1);

**Count 2:** Driving Under the Influence of Alcohol or Controlled Substance, in violation of 75 Pa.C.S.[] § 3802(c);

**Count 3:** Obscure Plates, in violation of 75 Pa.C.S.[] § 1332(b)(3);

**Count 4:** Stop Signs and Yield Signs, in violation of 75 Pa.C.S.[] § 3323(a);

**Count 5:** Turning Movements and Required Signals, in violation of 75 Pa.C.S.[] § 3334(b); and,

**Count 6:** Careless Driving, in violation of 75 Pa.C.S.[] § 3714(a).

[Appellant] filed an [o]mnibus [p]re-[t]rial [m]otion to [s]uppress [e]vidence on September 30, 2014. The [m]otion was subsequently withdrawn by [Appellant] at an [o]mnibus [p]re-[t]rial [m]otions [h]earing on December 8, 2014. [Appellant] thereafter requested that his case be continued several times. His case ultimately proceeded to a [n]on-[j]ury [t]rial that was held before this [c]ourt an October 9, 2018. At the beginning of [Appellant's] [n]on-[j]ury [t]rial, the Commonwealth presented a [m]otion to [w]ithdraw [Appellant's] charge at Count 2 due to a **Birchfield**[2] issue, which was granted. Upon consideration of the testimony presented at the [n]on-[j]ury [t]rial and after a review of an MVR[3] that was submitted into evidence by the Commonwealth, this [c]ourt found [Appellant] guilty at Counts 1 and 5, and not guilty at all other [c]ounts.

[Appellant] was sentenced on November 26, 2018. Specifically, at Count 1, [Appellant] was sentenced to six (6) months of probation and, at Count 5, [Appellant] was ordered to pay a $25.00 fine and costs. Additionally, [Appellant] was ordered to pay multiple fees, including a lab fee of $134.00 to the

---

[2] **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016).

[3] MVR stands for mobile video recording, and is also known as a dash-cam video.

Pennsylvania State Police Crime Lab. [Appellant] subsequently filed [p]ost-[s]entence [m]otions on December 6, 2018….

## FACTS

On the night of January 27, 2014, Pennsylvania State Police Troopers Brian Sachs and Joseph Pitsak were patrolling in Ligonier Borough, Pennsylvania, in a marked police vehicle. Trooper Sachs described the weather conditions that night as wet and icy, with snow on the road. While on patrol, the [t]roopers observed [Appellant's] vehicle fail to slow down or stop at a stop sign located at the intersection of West Main Street and South Fairfield Street. [Appellant's] vehicle subsequently turned left onto West Main Street in front of their patrol vehicle. The [t]roopers attempted to run [Appellant's] vehicle registration, but could not do so because it was covered with snow. They continued to follow [Appellant's] vehicle and observed it turn right onto North Walnut Street without a signal.

As a result of observing the three (3) aforementioned Motor Vehicle Code violations, the [t]roopers initiated a traffic stop of [Appellant's] vehicle by activating the patrol vehicle's emergency lights. [Appellant] continued on the road and pulled his vehicle into the driveway at his house. Trooper Sachs believed that [Appellant's] vehicle struck, or came very close to striking, bushes that overhung the driveway. He testified that [Appellant] could have pulled his vehicle into the driveway "fairly easily" without hitting any bushes or hanging over the edge of it. Trooper Sachs subsequently exited his patrol vehicle and approached [Appellant's] car. [Appellant] attempted to exit his vehicle, but Trooper Sachs instructed [Appellant] to remain inside of the vehicle and he complied. Trooper Sachs then asked [Appellant] where he was coming from. [Appellant] replied that he was driving from a bar in Ligonier Borough known as "Googly's." Trooper Sachs testified that [Appellant] exhibited signs of intoxication, including slurred speech, bloodshot glassy eyes, and the odor of alcohol on his person. Trooper Sachs did not recall if he asked [Appellant] for his driver's license at that point. He asked [Appellant] if he had been drinking and he replied in the affirmative. Trooper Sachs then asked [Appellant] how much he had to drink and he stated, "probably too much."

At one point, Trooper Sachs asked [Appellant] to step outside of his vehicle. Trooper Sachs testified that [Appellant] stumbled towards him and Trooper Sachs placed his hands on [Appellant]

to prevent him from falling. Trooper Sachs could not recall if [Appellant] stepped on snow and he did not believe that [Appellant] slipped on ice or anything else. He believed [Appellant's] stumbling was caused by the amount of alcohol that he consumed. Trooper Sachs asked [Appellant] to submit to a HGN (horizontal gaze nystagmus) field sobriety test.[2] Trooper Sachs attempted to perform the test, but [Appellant] was unable to follow … his instructions. Specifically, Trooper Sachs testified that he performed the "lack of smooth pursuit" test, which requires that an individual follow the tip of the [t]rooper's pen with [his] eyes while it moves left and right. The individual is instructed not to move [his] head during the test. Trooper Sachs testified that [Appellant] was unable to complete this test. He could not recall what [Appellant] specifically did to fail the test, but he believed that [Appellant] either followed the pen while turning his head or he did not follow the pen with his eyes. Trooper Sachs did not measure [Appellant's] pupils.

> [2] Defense [c]ounsel objected to any testimony regarding the HGN test because it is not admissible in trial. His objection was overruled. The HGN test was never completed by Trooper Sachs. Additionally, the Commonwealth's purpose for presenting Trooper Sachs'[s] testimony regarding the HGN test was to show that [Appellant] was unable to follow or comprehend Trooper Sachs'[s] instructions. Defense [c]ounsel also objected to the MVR that was presented by the Commonwealth to the extent that it showed the HGN test. This [c]ourt assured [d]efense [c]ounsel that the HGN test would not be considered.

Trooper Sachs did not perform any additional field sobriety tests on [Appellant] because he did not believe that it was safe due to the icy weather conditions and the fact that [Appellant] was staggering. [Appellant] was placed under arrest for suspected DUI. Trooper Sachs did not believe that [Appellant] was capable of safely operating a motor vehicle based on his experience, [Appellant's] statements that he had "too much to drink," [Appellant's] slurred speech, [Appellant's] demeanor and inability to stay balanced, and his observation of [Appellant's] commission of three (3) Motor Vehicle Code violations. Trooper Sachs preserved an MVR of the incident, which was admitted into evidence as Commonwealth's Exhibit 1 and played for the [c]ourt. The MVR began once Trooper Sachs activated his emergency lights, which occurred around the time that [Appellant's] vehicle turned right onto Walnut Street. Additionally, a picture showing

[Appellant's] driveway that was taken during the daytime was submitted into evidence by [d]efense [c]ounsel as Defense Exhibit A.

[Appellant] testified that he was at the Wicked Googly at about 1:20 a.m. on January 27, 2014. He noticed that the Chief of Police for Ligonier, John Berger (hereinafter "Chief Berger"), was also at the Wicked Googly and was drinking at the bar. [Appellant] claimed that he had an ongoing issue with Chief Berger since 2012, when he attempted to have relations with [Appellant's] now ex-wife. He testified that he would generally have "words" that were not nice with Chief Berger every time that they were both at the Wicked Googly. He did not have "words" with Chief Berger on January 27, 2014. [Appellant] also did not leave once he saw Chief Berger because he felt that he had a right to be at the Wicked Googly. [Appellant] consumed two (2) to three (3) beers and then left. About ten (10) minutes prior to [Appellant's] leaving, he observed Chief B[e]rger on his cellular phone. [Appellant] testified that he drove on Fairfield Street and came to a stop prior to turning on Main Street. He believed that he did not have any problem operating his vehicle.

[Appellant] was very involved in Ligonier politics. He testified that, once his divorce began with his ex-wife, Chief Berger and Ligonier Township fabricated several "things" against him, which were dismissed. [Appellant] claimed that Chief Berger wanted to have a relationship with his ex-wife and he wanted to prove that he could help her. [Appellant] believed that Chief Berger called Trooper Sachs on January 27, 2014, and Trooper Sachs was waiting for him. He testified, however, that he did not know Trooper Sachs prior to January 27, 2014. [Appellant] felt that Trooper Sachs may have showed … a little animosity or ill-will towards him during the incident. [Appellant] did not disagree that he smelled of alcohol that night. Additionally, he testified that he may have a lisp due to dental work, but his speech is "pretty good" if he tries to control it. [Appellant] also stated that he was wearing tennis shoes that night and it was extremely icy outside. [Appellant] testified that he had to touch the bushes that night with his vehicle because the bushes hung over his driveway. He removed the bushes after the incident because they were too large. [Appellant] testified that he normally wears glasses and he did not have his glasses on that night, so it was hard for him to focus when Trooper Sachs instructed him to follow his pen. He stated that he was also annoyed knowing "the reason [he] was being pulled over." Additionally, [Appellant] believed that he

replied, "you think too much" when Trooper Sachs asked him how much he had to drink, rather than "too much." He testified that he wanted to say "you think too much" because he knew he was being set up. He also stated that he may have sarcastically said "probably too much."

Trial Court Opinion (TCO), 2/25/2019, at 1-5 (internal citations and footnote omitted; formatting of list of counts slightly modified).

The trial court denied Appellant's timely post-sentence motion, which included a weight-of-the-evidence claim, on February 25, 2019. On March 5, 2019, Appellant filed a timely notice of appeal. The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he did not do so. The trial court subsequently issued its Rule 1925(a) opinion, in which it stated that the reasons for its decision appear in its February 25, 2019 opinion denying Appellant's post-sentence motion.

Presently, Appellant raises three issues for our review:

1. Whether the evidence presented at the non-jury trial was insufficient to sustain the verdict of guilty of DUI.

2. Whether the verdict was against the weight of the evidence.

3. Whether the order of restitution relating to a blood draw and analysis was illegal where such blood draw was unconstitutional pursuant to **Birchfield**….

Appellant's Brief at 4.

In Appellant's first issue, he argues that the evidence was insufficient to convict him of DUI-general impairment. **Id.** at 9. Appellant states that "[t]he evidence offered by the Commonwealth belies any assertion that he was not able to safely operate a motor vehicle. To the contrary, the MVR — which is the best evidence in the case — showed that he most certainly *was* capable

of operating a motor vehicle safely, as he did just that." *Id.* at 9-10 (emphasis in original). He asserts that, "[t]he MVR and the testimony of Trooper Sachs showed that while [Appellant] was driving his vehicle down Main Street in Ligonier, and then into his driveway on Walnut Street, that he did not weave, did not cross the center line, did not strike any other vehicles, nor did he speed or drive too slowly." *Id.* at 10 (citation omitted). Further, he says that Trooper Sachs's testimony about Appellant's stumbling after exiting his car does not align with the footage actually shown in the video. *Id.* Thus, he claims that the Commonwealth "failed to establish the 'incapable of safe driving' element" of the offense. *Id.*

> We apply the following standard of review:
>
> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Teems*, 74 A.3d 142, 144-45 (Pa. Super. 2013) (citation omitted).

> The relevant statute provides:
>
> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable

- 7 -

of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

This Court has acknowledged:

Section 3802(a)(1) … is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving…. The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

*Teems*, 74 A.3d at 145 (citation omitted).

Here, the trial court explained why it deemed the evidence sufficient to sustain Appellant's conviction for DUI-general impairment, as follows:

Viewing all of the evidence in the light most favorable to the Commonwealth, as the verdict winner, this [c]ourt finds that sufficient evidence was presented at [Appellant's] [n]on-[j]ury [t]rial to find each element of the charge at Count 1 beyond a reasonable doubt. It was undisputed that [Appellant] was the operator of the motor vehicle that was pulled over by Trooper Sachs on January 27, 2014. Additionally, sufficient evidence was presented at the [n]on-[j]ury [t]rial to show that [Appellant] was under the influence of alcohol to such a degree as to render him

incapable of safe driving. This [c]ourt was free to believe all, part, or none of the evidence and finds the testimony of Trooper Sachs to be credible. Trooper Sachs observed [Appellant] commit three (3) Motor Vehicle [C]ode violations on January 27, 2014. Specifically, he testified that [Appellant] failed to stop his vehicle at a stop sign, his license plate was obstructed by snow, and he made a right turn with his vehicle without a proper signal. When Trooper Sachs initiated a traffic stop of [Appellant's] vehicle, he saw it pull into a driveway and strike, or come close to striking, bushes that overhung the driveway. In his opinion, [Appellant] had the ability to pull into his driveway "fairly easily" without hitting any bushes. Additionally, Trooper Sachs asked [Appellant] where he was coming from and he replied that he was coming from a bar in Ligonier known as "Googly's." Trooper Sachs testified that [Appellant] had slurred speech and bloodshot glassy eyes, and he smelled of alcohol. He also asked [Appellant] about how much he had to drink and [Appellant] replied, "probably too much." Trooper Sachs asked [Appellant] to exit his vehicle and he stumbled forward, so Trooper Sachs placed his hands on [Appellant] to prevent him from falling. Trooper Sachs believed that [Appellant] stumbled due to the amount of alcohol that he consumed and not due to ice or anything else. Trooper Sachs was unable to perform field sobriety tests on [Appellant] because [Appellant] was unable to follow his instructions. He did not perform any additional field sobriety tests on [Appellant] due to the icy weather conditions and the fact that [Appellant] was staggering. He ultimately did not feel that [Appellant] was capable of safely operating a motor vehicle. This [c]ourt reviewed the MVR that was submitted into evidence by the Commonwealth multiple times and agreed with Trooper Sachs'[s] determination. Overall, sufficient evidence was presented for the [c]ourt to find [Appellant] guilty at Count I.

TCO at 7-8 (internal citations omitted).

We agree with the trial court. Although Appellant may not have weaved, sped, or struck any other vehicles, he committed three other Motor Vehicle Code violations, including failing to stop at a stop sign. Moreover, the other circumstantial evidence outlined by the trial court *supra*, such as Appellant's appearance, failure to follow instructions, admission that he had drank too

much, and stumbling, supports that Appellant was incapable of safely driving.[4] Accordingly, we reject his sufficiency claim.

In Appellant's second issue, he argues that, "[i]n the alternative, even if the evidence were legally sufficient to support the DUI conviction, the verdict was still against the weight of the evidence." Appellant's Brief at 11. He incorporates his sufficiency argument and maintains that "the MVR evidence was the best evidence of what happened during the traffic stop leading [to] the DUI charge. This video evidence flatly contradicted the police officer's testimony relating to what happened." *Id.* at 11-12.

> We apply the following standard of review to weight claims:
>
> As a general rule, the weight of the evidence is exclusively for the fact finder who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. We cannot substitute our judgment for that of the finder of fact. We may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, our role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion.

*Commonwealth v. Castelhun*, 889 A.2d 1228, 1234 (Pa. Super. 2005) (internal citations and quotation marks omitted).

---

[4] We address Appellant's argument that Trooper Sachs's testimony contradicts the MVR footage, specifically his stumbling, in our analysis of Appellant's weight claim. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009) (explaining that a review of the sufficiency of the evidence does not encompass an assessment of the credibility of testimony, as such claims implicate the weight of the evidence) (citations omitted).

We conclude that the trial court did not abuse its discretion. We have viewed the video and do not agree with Appellant that it contradicts the testimony of Trooper Sachs that Appellant stumbled. Accordingly, we reject Appellant's weight claim.

In Appellant's final issue, he contends that "the order of restitution relating to a blood draw and analysis was illegal where such blood draw was unconstitutional pursuant to *Birchfield*...." Appellant's Brief at 4. Specifically, he explains that he "was subjected to a warrantless blood draw, and his blood was submitted for analysis. Following the filing of the within charges, the United States Supreme Court decided *Birchfield*..., which held that warrantless blood draws are unconstitutional." *Id.* at 12. Consequently, he says that, "[f]ollowing the *Birchfield* decision, the Commonwealth agreed that it could not use the blood draw evidence and withdrew the DUI count based upon blood alcohol level." *Id.* Nevertheless, Appellant avers that "the Commonwealth sought restitution for the blood analysis, and the court below erroneously awarded such restitution." *Id.* He asserts that "[t]his would be analogous to a defendant having two theft charges, then having one withdrawn, but still having to pay restitution for the withdrawn count. … Why should restitution be awarded to analyze illegally obtained evidence?" *Id.* at 12-13.

In opposition to Appellant's claim that the $134.00 lab fee was illegal due to *Birchfield*, the Commonwealth "submits that this issue should be analyzed by examining the discretionary aspects of sentencing, rather than as

- 11 -

a constitutional claim." Commonwealth's Brief at 19. It explains that "the trial court imposed the lab fees upon [A]ppellant as part of sentencing. … [O]rdering [A]ppellant to pay lab fees was within the trial court's discretion in fashioning an appropriate sentence for [A]ppellant and the Commonwealth." *Id.* Further, the Commonwealth observes that "[t]he blood draw and subsequent analysis were performed two years prior to the Supreme Court's decision in *Birchfield*. The trial court, in imposing a sentence upon [A]ppellant, determined that the police department should not be left to suffer financial loss when they otherwise conducted a good faith, lawful investigation of [A]ppellant in accordance with existing case[]law and police procedure." *Id.* at 20; *see also* TCO at 9 ("At the time of the arrest, the police officers were conducting a proper DUI investigation in good faith. The police department, therefore, suffered the financial loss associated with said testing. Therefore, the restitution awarded in this case was not illegal.").

At the outset, we disagree with Appellant's and the trial court's classification of the lab fees as restitution. Restitution is meant "to provide the victim with the fullest compensation for the loss." 18 Pa.C.S. § 1106(c)(1)(i). Lab fees, in contrast, constitute a cost related to the prosecution of a criminal case. *See* 42 Pa.C.S. § 1725.3.[5] Appellant makes

___

[5] This statute provides, in relevant part, that:

> A person who is … convicted of a crime as defined in … 75 Pa.C.S.
> § … 3802 (relating to driving under influence of alcohol or
> controlled substance) … shall, in addition to any fines, penalties

no mention of this statute in his brief, nor does he discuss how it should be interpreted in light of the circumstances of his case. Further, Appellant does not convince us in his underdeveloped argument that this claim even implicates the legality of his sentence, let alone that his sentence is illegal. Instead, his argument on this issue constitutes approximately a single page of his brief, includes no examination of relevant authority, and lacks meaningful legal analysis. We decline to conduct this research and analysis for him. Accordingly, no relief is due. *See Gibbs*, 981 A.2d at 284 ("[The a]ppellant's challenge to the legality of his sentence is underdeveloped. It is [the a]ppellant's obligation to sufficiently develop arguments in his brief by applying the relevant law to the facts of the case, persuade this Court that there were errors below, and convince us relief is due because of those errors. If an appellant does not do so, we may find the argument waived.").

Judgment of sentence affirmed.

---

or costs, in every case where laboratory services were required to prosecute the crime or violation, be sentenced to pay a criminal laboratory or paramedic user fee which shall include, but not be limited to, the cost of sending a laboratory technician or paramedic to court proceedings.

*See* 42 Pa.C.S. § 1725.3(a).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2020